**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

PORFIRIA GONZALEZ-MEDINA,

*Petitioner,*

v.

ERIC H. HOLDER JR., Attorney General,

*Respondent.*

No. 10-70913

Agency No. A098-177-787

OPINION

On Petition for Review of an Order of the Board of Immigration Appeals

Submitted March 9, 2011*
Seattle, Washington

Filed April 7, 2011

Before: M. Margaret McKeown, Raymond C. Fisher, and Ronald M. Gould, Circuit Judges.

Opinion by Judge McKeown

---

*The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

4761

## COUNSEL

Russell W. Pritchett, Pritchett & Jacobson, P.S., Bellingham, Washington, for the petitioner.

Tony West, Thomas B. Fatouros and Anh-Thu P. Mai-Windle, United States Department of Justice, Washington D.C., for the respondent.

## OPINION

McKEOWN, Circuit Judge:

Porfiria Gonzalez-Medina, a native and citizen of Mexico, petitions for review of the decision by the Board of Immigration Appeals ("BIA") affirming an immigration judge's ("IJ") final order of removal, denying her claims for asylum and withholding of removal. In her petition, Gonzalez-Medina raises two issues of first impression: whether applying the one-year filing deadline to her asylum application violates the Equal Protection Clause, and whether domestic abuse that occurs in the United States can constitute past persecution. Although we are very sympathetic to her plight, we are unpersuaded by Gonzalez-Medina's legal arguments and we deny the petition.

## I.  BACKGROUND

Gonzalez-Medina entered the United States from Mexico in January 2001, to join her husband, also a Mexican citizen who was living illegally in the United States. About a year after Gonzalez-Medina arrived, her husband began abusing her. On several occasions he punched and kicked her, leaving bruises that took weeks to heal. He once whipped her with a television cable until her body was covered with lacerations. At one point, Gonzalez-Medina told her husband that she wanted a

divorce. He threatened to kill her, their son and himself if she tried to divorce him. Gonzalez-Medina tried to run away, but her husband locked her in their trailer for over a week. After that, Gonzalez-Medina never mentioned divorce again; she never sought a divorce.

In 2006, Gonzalez-Medina's husband was arrested for selling drugs and deported to Mexico. He called Gonzalez-Medina from Mexico on one or two occasions in 2006. She has not spoken to him since these calls.

The government commenced removal proceedings against Gonzalez-Medina in September 2006. On November 15, 2007, Gonzalez-Medina filed a Form I-589 Application for Asylum and Withholding of Removal. Gonzalez-Medina asserts that she is eligible for asylum and withholding of removal because her husband will continue abusing her if she returns to Mexico.

The IJ denied Gonzalez-Medina's application. The IJ found that Gonzalez-Medina was credible. Her asylum application was time-barred, however, because it was filed more than six years after she entered the United States.[1] With respect to withholding of removal, Gonzalez-Medina conceded in her testimony that there was no past persecution. The IJ found that Gonzalez-Medina had not demonstrated that it was more likely than not that she would be subject to future persecution if she returned to Mexico.

The BIA upheld the IJ's decision. The BIA agreed that the asylum application was untimely. Before the BIA, Gonzalez-Medina argued that her husband's abuse of her in the United States constituted past persecution for purposes of withhold-

---

[1]The IJ noted that even if her husband's return to Mexico was a changed circumstance, Gonzalez-Medina did not file her application within a reasonable period of time following the change—she filed it seventeen months after his deportation.

ing of removal. The BIA held that Gonzalez-Medina had failed to establish past persecution because such persecution must have occurred in the proposed country of removal. Accordingly, the abuse Gonzalez-Medina suffered in the United States could not constitute past persecution. The BIA concluded that Gonzalez-Medina had failed to establish that it was more likely than not that she would be subject to future persecution in Mexico because she had not met her burden of showing that it would be unreasonable for her to relocate within the country.

Gonzalez-Medina also argued before the BIA that applying the one-year time bar to her asylum claim violated the Fifth Amendment's Equal Protection Clause. The BIA declined to consider this argument because it does not have authority to review the constitutionality of the immigration laws.

## II. ANALYSIS

### A. Equal Protection Claim

The Immigration and Naturalization Act ("INA") requires that an alien file an asylum application within one year of arrival in the United States. 8 U.S.C. § 1158(a)(2)(B). Gonzalez-Medina concedes that she failed to meet this deadline, but urges that deeming her application untimely violates the Equal Protection Clause. *See* U.S. CONST. amend. V.

**[1]** To establish an equal protection violation, Gonzalez-Medina must show that she is being treated differently from similarly situated individuals. *See Abboud v. INS*, 140 F.3d 843, 848 (9th Cir. 1998) ("[T]he Fifth Amendment only requires the government to treat similarly situated individuals similarly."). Because Gonzalez-Medina does not allege discrimination on the basis of a suspect class, any differential treatment violates equal protection only if it lacks a "rational basis." *See United States v. Calderon-Segura*, 512 F.3d 1104, 1107 (9th Cir. 2008); *Ram v. INS*, 243 F.3d 510, 517 (9th Cir.

2001) ("'Line-drawing' decisions made by Congress or the President in the context of immigration and naturalization must be upheld if they are rationally related to a legitimate government purpose."). The government "has no obligation to produce evidence to sustain the rationality of a statutory classification." *Heller v. Doe*, 509 U.S. 312, 320 (1993). Rather, Gonzalez-Medina has "the burden to negate every conceivable basis which might support a legislative classification . . . whether or not the basis has a foundation in the record." *Hernandez-Mezquita v. Ashcroft*, 293 F.3d 1161, 1164 (9th Cir. 2002) (internal citation and quotation marks omitted).

**[2]** The BIA has held that the one-year deadline for filing an asylum application restarts if an alien leaves the United States and then reenters—an application may be filed within one year of reentry, even if the applicant previously lived in the United States for more than a year and was gone for only a brief period. *See Matter of F-P-R*, 24 I&N Dec. 681, 683-85 (BIA 2008). Leaving the country resets the deadline *only* if the applicant's departure is for a "legitimate" reason and not "solely or principally . . . to overcome the 1-year time bar."[2] *Id.* at 685. Accordingly, an asylum application from an alien who has overstayed the one-year window is not time barred if the alien leaves the country for a legitimate reason and reenters prior to filing. At the same time, an application from an alien who has been in the United States for more than a year but has *not* left—like Gonzalez-Medina—will be subject to the one-year bar.

---

[2]In *Matter of F-P-R*, the petitioner, a Mexican who had lived in the United States for almost 15 years without filing for asylum, went to Mexico for three days to attend his stepfather's funeral. 24 I&N Dec. at 681. He filed an application for asylum within a year of returning from the funeral. *Id.* The BIA held that the application was not time-barred because the petitioner had left the United States for a "legitimate" reason—the funeral—and had filed within one year of reentering the United States. *Id.* at 683-85.

**[3]** Gonzalez-Medina asserts that such differential application of the time bar violates Equal Protection because there is no rational reason to apply the bar to her asylum application, but not to the application of an alien who leaves and reenters prior to filing. We disagree. Application of the time bar to Gonzalez-Medina's asylum claim withstands rational basis review. As the government explains in its brief, there is a legitimate government purpose for the one-year deadline itself:

> Congress could have rationally concluded that persons with legitimate asylum claims would more likely present their asylum claims within a short time after entering the United States and set a cut-off date for filing an asylum application to curb abuse of the asylum process.

This purpose is not undermined by the narrow exception identified by Gonzalez-Medina. Of course not all individuals who wish to apply for asylum will be able to leave the United States for legitimate reasons and reenter prior to filing. Rather, if the time bar is applied to late applications like Gonzalez-Medina's, most applicants will still need to file during the first year, and the time bar will help identify legitimate claims, provide a fixed cut-off date for filings, serve as a limitation on the number of applicants and reduce abuse of the system. Accordingly, the government's treatment of Gonzalez-Medina is "rationally related to a legitimate government purpose," and she has failed to establish an Equal Protection claim. *Ram*, 243 F.3d at 517.

## B.   Past Persecution

**[4]** The regulations implementing the INA provide that past persecution must have occurred "in the proposed country of removal." 8 C.F.R. § 1208.16(b)(1)(i). Referencing this regulation, the BIA held that the abuse Gonzalez-Medina suffered in the United States could not constitute past persecu-

tion. To determine whether the regulation is valid, we apply the familiar *Chevron* two-step analysis. *See Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 489 (9th Cir. 2007) (en banc). We first ask whether "Congress has directly spoken to the precise question at issue." *Id.* (citing *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984)). If the statute is unclear, we ask "whether the agency's answer is based on a permissible construction of the statute." *Id.* at 492 (citing *Chevron*, 467 U.S. at 843). Here, the ambiguity of the statute requires us to consider whether the agency's construction is permissible.

To qualify for withholding of removal, an applicant must establish that she is a refugee. 8 U.S.C. §§ 1158(b)(1)(B), 1231(b)(3)(C). The INA defines a refugee as someone who "is unable or unwilling to return to [her country of nationality] . . . because of persecution or a well-founded fear of persecution" on account of a protected ground. 8 U.S.C. § 1101(a)(42)(A). These provisions do not establish *where* past persecution may occur. The statute does not say that persecution must occur in the proposed country of removal, but it also does not say that persecution can occur elsewhere—it simply does not speak to the issue. Therefore we must resolve the question under *Chevron* step two, according the regulations the requisite deference.

**[5]** The regulation mandating that past persecution occur in the proposed country of removal is a permissible construction of the statute. The INA's withholding of removal provisions are clearly intended to protect individuals from being returned to countries where they are likely to be persecuted. *See* 8 U.S.C. § 1231(b)(3)(A) ("[T]he Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country . . . ."). It is reasonable to link the past persecution provision to the proposed country of removal. In contrast, there is no logical nexus between persecution in the United States, for example, and risk of persecution in the country of

removal. Accordingly, the regulation is a valid construction of the statute and past persecution must have occurred in the proposed country of removal.

Although we do not discount the intolerable abuse that Gonzalez-Medina suffered in the United States, she did not present any evidence that she was abused in Mexico, the country of removal. Accordingly, the BIA's determination that Gonzalez-Medina failed to establish past persecution is supported by substantial evidence.

## C.  Relocation within Mexico

**[6]** An applicant for withholding of removal cannot establish that it was more likely than not that she would be subject to future persecution "if the applicant could avoid persecution by relocating to another part of the [proposed country of removal]." 8 C.F.R. § 1208.13(b)(2)(ii). Where the applicant has not established past persecution, "the applicant shall bear the burden of establishing that it would not be reasonable for him or her to relocate." 8 C.F.R. § 1208.13(b)(3)(i).

**[7]** The BIA held that Gonzalez-Medina failed to establish that it was not reasonable for her to relocate within Mexico. Substantial evidence supports the BIA's determination. Gonzalez-Medina testified that she would "never be able to escape from [her husband] in Mexico" and that he would "force [her] to be with him again." These statements, on their own, are insufficient to meet Gonzalez-Medina's burden of proof. Gonzalez-Medina has not been in touch with her husband except once via telephone since he was deported, and she offers no evidence of substance on the relocation issue. Gonzalez-Medina's parents and nine siblings live in Mexico and her parents have many years of experience helping domestic violence victims, including finding shelter for victims who have left their abusers. Nothing in the record supports Gonzalez-Medina's claim that she will be unable to

relocate.[3] *See Kaiser v. Ashcroft*, 390 F.3d 653, 659-60 (9th Cir. 2004).

**PETITION DENIED.**

---

[3]Gonzalez-Medina argues that the BIA disregarded the Immigration and Naturalization Service's proposed rule on Asylum and Withholding Definitions, which states that, in contrast to other persecution cases, "[a domestic abuse] victim's attempt to leave typically increases the abuser's motivation to locate and harm her" and that an abuser is more likely to know where a victim would go or who she would turn to for assistance. 65 Fed. Reg. 76,588 at 76,595. The proposed rule, while informative and descriptive generally of abuse situations, does not provide the evidence necessary to sustain a relocation claim.