**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2714
_____

EDWIN MUNOZ PEREZ,
                              Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A 216-652-305)
Immigration Judge: Mirlande Tadal
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 15, 2022
Before: MCKEE, SHWARTZ and MATEY, Circuit Judges

(Opinion filed: April 22, 2022)
_____

OPINION[*]
_____

PER CURIAM

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Edwin Munoz Perez petitions for review of a final order of removal issued by the Board of Immigration Appeals (BIA). For the reasons detailed below, we will deny his petition for review.

I.

Munoz Perez is a 24-year-old native of El Salvador. In 2012, at age 15, he left El Salvador and entered the United States without authorization or inspection. He was arrested on an assault charge in 2020, and thereafter the Department of Homeland Security charged him with being removable for being present without having been admitted or paroled.[1] See 8 U.S.C. § 1182(a)(6)(A)(i). Munoz Perez, acting pro se, conceded the charge of removability and applied for statutory withholding of removal and relief under the Convention Against Torture (CAT).[2]

At his hearing, Munoz Perez appeared pro se and was questioned by the Immigration Judge (IJ) and the Government's counsel. Munoz Perez testified that beginning around the time he was eight years old, he was beaten by members of MS-13 at his school. He explained that "there are two different gangs in El Salvador, and when you come from one town to the other, each gang thinks that you belong to the other gang," and that he lived "in a neighborhood that belonged to different gang. So when [he]

---

[1] He was not charged as removable for having been convicted of a criminal offense.

[2] He also sought asylum, but his application was deemed untimely. See 8 U.S.C. § 1158(a)(2)(B). He did not challenge that determination on appeal to the BIA. Any asylum claim included in the petition for review is thus unexhausted and we lack jurisdiction to consider it. See 8 U.S.C. § 1252(d)(1); Nkomo v. Att'y Gen., 986 F.3d 268, 272 (3d Cir. 2021).

went to school in [MS-13] territory, . . . they assaulted [him]." A.R. 129–30. At some point, his mother filed a complaint with the school, and there was briefly a police presence on site; once the police left, the beatings resumed. See A.R. 132. On another occasion, he was assaulted by what he believes were members of rival gang Mara 18 after he participated in a soccer match with a result they disliked. See A.R. 135–37 ("[I]f they lose, they assault you because they feel less superior to you.").

Munoz Perez then explained that around the same time, in the year or so leading up to his fleeing El Salvador, MS-13 members attempted to recruit him into the gang. He testified that when he was approached for recruitment, he would "laugh and . . . say okay, that's fine because . . . [he] didn't want to get them angry at [him]." A.R. 140. He testified that he left El Salvador because he "want[ed] to have a different culture," did not want to become a gang member, and "didn't want to keep having the same thing . . . continue to happen." A.R. 139. He said he fears returning to El Salvador because either gang might try again to recruit him or, alternatively, torture and kill him. When asked why they would want to do that, he responded, "because being a young man, to them that's like . . . a sin. And also for coming to the United States. . . . [W]hen you go back, they think you have money[.]" A.R. 142.

The IJ found the testimony to be credible and corroborated but denied all relief. Munoz Perez appealed, and the BIA affirmed the IJ's decision. Munoz Perez timely petitioned this Court to review the BIA's decision.

II.

We have jurisdiction pursuant to 8 U.S.C. § 1252. Our review is of the BIA's decision, although we also review the IJ's decision to the extent that the BIA adopted or deferred to the IJ's analysis. See Zhang v. Gonzales, 405 F.3d 150, 155 (3d Cir. 2005). We must uphold the agency's factual findings if they are "supported by reasonable, substantial and probative evidence on the record considered as a whole." Kayembe v. Ashcroft, 334 F.3d 231, 234 (3d Cir. 2003). We will reverse a finding of fact only if "any reasonable adjudicator would be compelled to conclude to the contrary." § 1252(b)(4)(B).

III.

A. Withholding of Removal

Munoz Perez first claims that the BIA erred in finding that he was not entitled to statutory withholding of removal. To succeed on his claim, Munoz Perez must show that he was persecuted, or that it is more likely than not that he will be persecuted in the future, "because of" a statutorily protected ground, including "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); see also 8 C.F.R. § 1208.16. To be cognizable, a particular social group must be "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." S.E.R.L. v. Att'y Gen., 894 F.3d 535, 540 (3d Cir. 2018) (quoting In re M-E-V-G-, 26 I. & N. Dec. 227, 237 (BIA 2014)). The "because of" or "nexus" element places the burden on the applicant to show that the wrongdoer knew or believed that the applicant had the protected characteristic and that knowledge or belief motivated or will motivate the

4

wrongdoer to commit harmful acts. See Gomez-Zuluaga v. Att'y Gen., 527 F.3d 330, 343, 345–46 (3d Cir. 2008); cf. Valdiviezo-Galdamez v. Att'y Gen., 663 F.3d 582, 609 (3d Cir. 2011) (holding that an applicant for asylum must present "evidence that the gang knew of his political opinion and targeted him because of it").

The IJ here determined that Munoz Perez's proposed particular social groups of "victims or potential victim[s] of gangs in El Salvador" or "young men who resist gang recruitment/violence in El Salvador" were not cognizable. A.R. 58. Even assuming they were, the IJ found that any persecution Munoz Perez had experienced was not because of his membership in those groups. See A.R. 59–60. Moreover, the IJ held that Munoz Perez's purported refusal to join a gang is not a "political opinion," and, in any case, he had not been targeted based on holding that opinion. See A.R. 60.

On appeal to the BIA, Munoz Perez clarified that his proposed particular social group was "individuals who have been recruited by a major Salvadoran gang but publicly refuse to join." A.R. 18. The BIA did not reach the question of whether this proposed social group was cognizable, instead affirming because he had not established a nexus between any mistreatment and his purported membership in that group or an anti-gang political opinion. See A.R. 3–4. The BIA explained that, although he "did experience harm that would be considered persecution," his "testimony indicate[d] that he was harmed during his childhood in El Salvador as a result of personal issues with gang members, such as perceived affiliation with an opposing gang or defeating them at soccer match," rather than because of his alleged resistance to recruitment. A.R. 3–4. Moreover, he had not testified that he ever publicly expressed his resistance to the gang or an anti-

5

gang political opinion, and any persecution he did suffer predated the express recruitment attempts. See A.R. 4.

We conclude that substantial evidence supports the BIA's determination. Munoz Perez's own timeline places the assaults perpetrated by gang members before any active recruitment, and he seemingly attempted to placate the gangs in the face of active recruitment, rather than resist.[3] The record thus does not compel the conclusion that he suffered or will suffer persecution on a statutorily protected ground.

## B. Convention Against Torture

Munoz Perez's second claim is that the BIA erred in denying his application for relief under CAT. To succeed on this claim, Munoz Perez must establish (1) that he is "more likely than not" to be tortured if removed to El Salvador; and (2) that this torture would occur "by or at the instigation of or with the consent or acquiescence of" a Salvadoran public official. 8 C.F.R. § 1208.16(c)(2); § 1208.18(a)(1); Myrie v. Att'y Gen., 855 F.3d 509, 515 (3d Cir. 2017). The BIA's conclusion about what would likely happen to Munoz Perez is factual, see Myrie, 855 F.3d at 516, and reviewed for substantial evidence, see Galeas Figueroa v. Att'y Gen., 998 F.3d 77, 92 (3d Cir. 2021).

---

[3] Moreover, violence used indiscriminately by a lawless group as a recruitment tactic to "fill their ranks" does not constitute persecution on a protected ground. See INS v. Elias-Zacarias, 502 U.S. 478, 482–83 (1992); Gomez-Zuluaga, 527 F.3d at 345. And to the extent that Munoz Perez relies on the fact that he was stabbed in 2017 by an unknown group of people in New Jersey as evidence of past persecution, see Pet'r's Br. 5, as the BIA explained, "the claimed past persecution must occur 'in the proposed country of removal,'" A.R. 4 (quoting 8 C.F.R. § 1208.16(b)(1)); see also Gonzalez-Medina v. Holder, 641 F.3d 333, 337 (9th Cir. 2011) ("[T]here is no logical nexus between persecution in the United States . . . and risk of persecution in the country of removal.").

The BIA here concluded that, although Munoz Perez "was physically assaulted by gang members during his childhood in El Salvador and . . . claims that several of his cousins [living in El Salvador] are gang members, he has presented an overall speculative fear that now, several years later, he remains at risk of being tortured." A.R. 4. The BIA further determined that, considering the country conditions indicating the Salvadoran government actively opposes the gangs, Munoz Perez had not shown that, "even if he is harmed upon his removal, such harm would be inflicted with the requisite degree of state action," such as official acquiescence or willful blindness. A.R. 4–5 (citations omitted).

Upon review of the record, substantial evidence supports the BIA's predictive decisions. Munoz Perez has been absent from El Salvador for a decade. He presented no testimony or evidence that anyone specifically is looking for him or wishes to harm him. The past gang assaults in El Salvador occurred at school when he was a child and, at least in one instance, the police were able to offer protection from gang violence upon request. The country conditions evidence indicates that the Salvadoran government is taking steps to oppose the gangs, see Resp't's Br. 31–32 (citing A.R. 304–08, 310; A.R. 309; A.R. 314; A.R. 326), and Munoz Perez has provided neither contrary evidence nor evidence showing that these efforts have been ineffectual, see Quinteros v. Att'y Gen., 945 F.3d 772, 788 (3d Cir. 2019). The remoteness of the past incidents of violence that Munoz Perez suffered, the lack of connection to any active threats against him,[4] and the absence

---

[4] Munoz Perez asserts that the BIA should have considered his 2017 stabbing in New Jersey as evidence that he would be tortured in El Salvador. However, he has not explained how this act of violence committed within the United States by a group of people he "had never seen before" and cannot identify, though he "believe[s] they were

of evidence that officials would participate in or acquiesce to violence against him lead us to conclude that substantial evidence supports the BIA's decisions. See generally Romero v. Att'y Gen., 972 F.3d 334, 343 (3d Cir. 2020). Therefore, the BIA did not err in denying the CAT claim.

Accordingly, we will deny Munoz Perez's petition for review.

---

MS-13," Pet'r's Br. 3, is relevant to the possibility of future torture in El Salvador. Thus, we cannot say that the BIA ignored evidence that was relevant to the analysis. See Huang v. Att'y Gen., 620 F.3d 372, 388 (3d Cir. 2010) (noting that the BIA may not ignore evidence favorable to an applicant but need not "discuss every piece of evidence mentioned").