**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 10-4676**
_____

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

     v.

ANTHONY JOSEPH TRACY,

              Defendant - Appellant.

_____

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Leonie M. Brinkema, District Judge. (1:10-cr-00122-LMB-1)

_____

Argued: September 23, 2011      Decided: November 30, 2011

_____

Before KING, SHEDD, and FLOYD, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**ARGUED:** Arjun Garg, KIRKLAND & ELLIS, LLP, Washington, D.C., for Appellant. Gordon D. Kromberg, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Michael S. Nachmanoff, Federal Public Defender, Geremy C. Kamens, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Neil H. MacBride, United States Attorney, Jeanine Linehan, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Anthony Tracy pled guilty to one count of conspiring to encourage non-citizens to enter the United States illegally, pursuant to 8 U.S.C. § 1324(a)(1)(A)(v)(I), but reserved the right to appeal the district court's denial of his motion to dismiss that charge. On appeal, Tracy argues that the indictment insufficiently alleges a violation of the statute, the statute is unconstitutionally vague, and the statute is unconstitutionally overbroad. We affirm.

I.

On April 7, 2010, the Grand Jury for the Eastern District of Virginia, Alexandria Division, returned a two-count indictment in which it charged Tracy with one count of conspiring to encourage non-citizens to enter the United States illegally, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) (the immigration charge) and one count of making a false statement on a passport application, in violation of 18 U.S.C. § 1542 (the passport charge). Upon Tracy's motion, the district court dismissed the passport charge.

The indictment, in relevant part, states the following:

> THE GRAND JURY CHARGES THAT:
> General Allegations
> At all times material to this indictment:

. . . .

4.  Aliens who enter the United States unlawfully do so through a variety of means, to include entry by entering at any time and place other than as designated by immigration officers, eluding examination and inspection by immigration officers, entering by willfully false and misleading representation, and entry by the willful concealment of a material fact in a Visa application.

. . . .

COUNT ONE
(Conspiracy to Induce and Encourage Aliens to Enter the United States)

THE GRAND JURY FURTHER CHARGES THAT:

From in and around April 2009 to in and around February 2010, subject to the jurisdiction of the United States, within the Eastern District of Virginia and elsewhere, defendant ANTHONY JOSEPH TRACY did unlawfully and knowingly conspire with others, known and unknown to the grand jury, to encourage and induce an alien to come to, enter, and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry, and residence was and would be in violation of law.

Ways, Manner and Means of the Conspiracy

1. It was part of the conspiracy that defendant ANTHONY JOSEPH TRACY would and did operate a travel business in Nairobi, Kenya, in Africa, known as Noor Services.

2. It was further part of the conspiracy that defendant ANTHONY JOSEPH TRACY, under the guise of his business, Noor Services, would fraudulently obtain travel documents to facilitate the travel of non-U.S. citizens (hereinafter referred to as "aliens") from Kenya to Cuba, knowing that, in fact, the ultimate destination of said aliens was the United States and not Cuba.

3

3. It was further part of the conspiracy that defendant ANTHONY JOSEPH TRACY would use fraudulent Kenyan passports and identification cards possessed by the aliens in the application process for obtaining travel visas from the Embassy of Cuba in Nairobi, Kenya.

4. It was further part of the conspiracy that defendant ANTHONY JOSEPH TRACY would provide each alien with proof of Kenyan residence, falsified bank records, a round trip airline ticket, and proof of hotel accommodations in Cuba, as required to obtain a travel visa from the Embassy of Cuba.

5. It was further part of the conspiracy that once each alien's fraudulent documents were prepared, defendant ANTHONY JOSEPH TRACY met with and provided the documents to unindicted co-conspirators, known to the Grand Jury as "Consuela" and "Helen," at the Embassy of Cuba in Nairobi, Kenya. The unindicted co-conspirators would fraudulently provide defendant TRACY with Cuban travel visas for the aliens.

6. It was further part of the conspiracy that defendant ANTHONY JOSEPH TRACY would provide each of the aliens with a fraudulently obtained Cuban travel visa for the approximate fee of $400 (in U.S. dollars).

7. It was further part of the conspiracy that defendant ANTHONY JOSEPH TRACY would meet with the aliens at Noor Services in Nairobi, Kenya, where he would instruct them as to how to reach the United States from Cuba.
(In violation of Title 8, United States Code, Section 1324(a)(1)(A)(v)(I)).

Tracy subsequently moved the district court to dismiss the immigration charge, but it declined to do so. According to the district court, the motion to dismiss the immigration charge was premature. It determined that the crime of conspiracy is broad

4

enough to include the type of activity that the government alleged, assuming the government could prove that Tracy knowingly and intentionally combined with at least one other person to assist others in their efforts to enter into the United States illegally.

Thereafter, Tracy pled guilty to the immigration charge, but reserved the right to appeal the denial of the dismissal of that charge. Tracy exercised that right by filing this timely appeal.

II.

Tracy first contends that the indictment was legally insufficient. We review a challenge to the sufficiency of the indictment de novo. United States v. Brandon, 298 F.3d 307, 310 (4th Cir. 2002). We will find an indictment to be legally sufficient "(1) if it alleges the essential elements of the offense, that is, it fairly informs the accused of what he is to defend; and (2) if the allegations will enable the accused to plead an acquittal or conviction to bar a future prosecution for the same offense." United States v. Rendelman, 641 F.3d 36, 44 (4th Cir. 2011).

Section 1324(a) states that anyone who participates in any conspiracy to "encourage[] or induce[] an alien to come to, enter, or reside in the United States, knowing or in reckless

5

disregard of the fact that such coming to, entry, or residence is or will be in violation of law . . . shall be punished as provided in subparagraph (B) [of the statute]." 8 U.S.C. § 1324(a)(l)(A)(iv)-(v).

Tracy maintains that the indictment fails to allege that he encouraged non-citizens to travel directly into the United States illegally. As such, according to Tracy, the indictment is invalid because the statute makes it unlawful to encourage or induce non-citizens to travel directly into the United States illegally, but it does not make it unlawful to encourage or induce non-citizens to travel indirectly into the United States illegally. We cannot yield to the force of this reasoning.

As alleged in the indictment, Tracy fraudulently obtained travel documents to help non-citizens travel from Kenya to Cuba, with the knowledge that their ultimate destination was the United States, not Cuba. Moreover, according to the indictment, as a part of the conspiracy, Tracy would meet with the aliens in Kenya, where he would give them instructions on how to reach the United States from Cuba. Hence, the indictment alleged with specificity that Tracy conspired to encourage aliens to come to the United States illegally, albeit by way of Cuba. These allegations are more than enough to meet the requirements of the statute.

Nevertheless, Tracy suggests that, because the phrase "either directly or indirectly" modified the words "encourage or induce" in an earlier version of the statute, Congress meant for the present version, which omits this phrase, to encompass only direct encouragement and inducement. Thus, according to Tracy, encouraging travel to third countries on the way to the United States does not fall within the scope of prohibited conduct. We are unpersuaded.

Although Congress omitted the phrase "either directly or indirectly" from the statute, we are unconvinced that, in doing so, it meant for us to interpret the statute to limit the statute's ambit only to direct illegal entry into the United States. "When we are faced with a question of statutory interpretation, our starting point for discerning congressional intent is the language of the statute itself. Congress is presumed to have used words according to their ordinary meaning unless a different use is clearly indicated." Matala v. Consolidation Coal Co. 647 F.2d 427, 429 (4th Cir. 1981) (citations omitted).

The plain and unambiguous language of the statute reveals that it applies to a wide range of conduct. Congress did not clearly indicate that the statute is to apply only to encouragement and inducement to enter the United States illegally by a direct route. In the absence of a clear

7

indication, we will not impose such a limitation.  Thus, we hold that § 1324 makes it illegal to encourage or induce a non-citizen to enter the United States unlawfully, directly or indirectly.

Furthermore, the absence of the words "either directly or indirectly" in the statute makes no discernible difference. Contrary to Tracy's arguments otherwise, whether Tracy encouraged aliens to come to the United States illegally by a direct route, or toward the United States illegally by an indirect route, is of no moment.  Here, the indictment alleged that Tracy knowingly conspired to help non-citizens enter this country illegally by way of an indirect route.  That would be a violation of the statute, as charged in the indictment.

According to Tracy, the indictment was also legally insufficient because it failed to specify which law aliens would have violated in coming into the United States.  A violation of the statute requires that the non-citizen be coming to the United States "in violation of law."  § 1324 (a)(1)(A)(iv).  The government counters that this argument is waived.  Assuming, without deciding, that the argument is not waived, we find that it is meritless.

When viewed in context, the statute cannot reasonably be read as referring to anything but violations of United States immigration law.  Furthermore, the indictment sets forth the

8

allegations against Tracy in detail. Accordingly, it is unreasonable to think that he was unaware of the charges against him. Any argument to the contrary is unconvincing.

There is no question that the indictment alleges the essential elements of a conspiracy to induce and encourage non-citizens to enter the United States illegally and fairly informs Tracy as to what he is to defend. In fact, the indictment tracks the language of the statute almost verbatim. In addition, the indictment then sets forth specific factual allegations detailing the ways, manners, and means of the conspiracy. Thus, we are persuaded that the indictment was such that Tracy cannot be prosecuted in the future for the same offense.

As the district court observed, Tracy's motion to dismiss the immigration charge was premature. Much of what he argued in the district court and on appeal goes to the sufficiency of the evidence, not the sufficiency of the indictment. What is sufficient for a grand jury to indict might well be insufficient for a petit jury to convict. Therefore, although we are unable to say whether the evidence would have been sufficient for a petit jury to convict Tracy, we are able to say that the indictment was sufficient to give Tracy adequate notice of the charges against which to defend and to prevent future prosecution for the same offense.

9

III.

Tracy's second argument is that § 1324 is unconstitutionally vague as applied. We review the district court's legal conclusions on this claim de novo. United States v. McManus, 23 F.3d 878, 882 (4th Cir. 1994).

"Due process requires that a criminal statute provide adequate notice to a person of ordinary intelligence that his contemplated conduct is illegal, for 'no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.'" Buckley v. Valeo, 424 U.S. 1, 77 (1976) (quoting United States v. Harriss, 347 U.S. 612, 617 (1954)). Accordingly, "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357 (1983).

Tracy avers that § 1324(a)(1)(A)(iv) is unconstitutionally vague because he did not have fair notice that his conduct violated the statute. We need not linger long here. Much of what Tracy sets forth in his vagueness argument we have already considered and rejected in our discussion of the sufficiency of the indictment.

10

Tracy states, in effect, that a person of ordinary intelligence would not understand that providing false travel documents from Cuba or instructions as to how to come from Cuba to the United States would constitute encouraging a non-citizen to come to the United States illegally. Moreover, according to Tracy, there is no precedent for allowing Tracy to be charged for assisting non-citizens to come indirectly toward the United States, as opposed to helping them come directly to the United States.

Tracy helped non-citizens in travel, knowing that the end result was that they would enter the United States unlawfully. To further assist them, he provided them with fraudulent documents for their travel. We think that a person of ordinary intelligence would understand that assisting those non-citizens indirectly to enter the United States, knowing that they would be entering the country illegally, encompasses encouraging or inducing them to do so under § 1324. As such, this claim fails.

IV.

Third, Tracy asserts a facial overbreadth challenge. We review the district court's legal conclusions as to this issue de novo. McManus, 23 F.3d at 882.

"According to . . . First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount

11

of protected speech. The doctrine seeks to strike a balance between competing social costs." United States v. Williams, 553 U.S. 285, 292 (2008). The government's interest in prohibiting criminal conduct must be weighed against the danger of chilling constitutionally protected speech. Id. "[T]o maintain an appropriate balance, we have vigorously enforced the requirement that a statute's overbreadth be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." Id.

Tracy declares that speech that encourages illegal aliens to come to the United States is protected by the First Amendment in certain instances. We have long held, however, "that speech . . . that constitutes criminal aiding and abetting does not enjoy the protection of the First Amendment." Rice v. Paladin Enters., Inc., 128 F.3d 233, 242 (4th Cir. 1997).

In his overbreadth challenge, Tracy again raises his direct versus indirect argument, declaring that merely encouraging unlawful travel to another country should not be covered by the statute. But, the statute does not make it illegal to encourage unlawful travel to another country. What it makes illegal is to encourage or to induce a non-citizen to come into this country, either directly or indirectly, "knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law." § 1324(a)(1)(A)(iv).

12

Although there may be some instances in which we might find that the statute chills protected speech, we are unconvinced that the statute prohibits a substantial amount of such speech. Consequently, because "a law should not be invalidated for overbreadth unless it reaches a substantial number of impermissible applications," New York v. Ferber, 458 U.S. 747, 771 (1982), we hold that the statute is not invalid.

V.

For the foregoing reasons, the judgment of the district court is in all respects

AFFIRMED.