**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

HELAMAN HANSEN,
*Defendant-Appellant.*

No. 17-10548

D.C. No.
2:16-cr-00024-
MCE-1

OPINION

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Jr., District Judge, Presiding

Argued and Submitted November 15, 2021
San Francisco, California

Filed February 10, 2022

Before: M. Margaret McKeown and Ronald M. Gould,
Circuit Judges, and Jane A. Restani,* Judge.

Opinion by Judge Gould

---

*The Honorable Jane A. Restani, Judge for the United States Court
of International Trade, sitting by designation.

**SUMMARY**[**]

**Criminal Law**

Vacating convictions on two counts of encouraging or inducing an alien to reside in the United States for private financial gain in violation of 8 U.S.C. § 1324(a)(1)(A)(iv), and remanding for resentencing, the panel held that subsection (iv) is overbroad and unconstitutional.

The panel interpreted subsection (iv) as prohibiting someone from (1) inspiring, helping, persuading, or influencing, (2) through speech or conduct, (3) one or more specified aliens (4) to come to or reside in the United States in violation of civil or criminal law.

The panel rejected the government's argument that subsection (iv) is limited to speech integral to criminal conduct, specifically solicitation and aiding and abetting. Accepting the government's position that prosecutions for procuring and providing fraudulent documents and identification information to unlawfully present aliens, assisting in unlawful entry, misleadingly luring aliens into the country for unlawful work, and smuggling activities "form the core" of subsection (iv)'s plainly legitimate sweep, the panel wrote that it is apparent that subsection (iv)'s legitimate sweep is relatively narrow.

The panel wrote that subsection (iv) covers a substantial amount of speech protected by the First Amendment, given that many commonplace statements and actions could be

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

construed as encouraging or inducing an undocumented immigrant to come to or reside in the United States. The panel wrote that subsection (iv)'s narrow legitimate sweep pales in comparison to the amount of protected expression encompassed by the subsection. The panel concluded that subsection (iv) is therefore facially overbroad.

The panel affirmed all other counts of conviction in a simultaneously filed memorandum disposition.

## COUNSEL

Carolyn M. Wiggin (argued), Assistant Federal Defender; Heather E. Williams, Federal Defender; Office of the Federal Defender, Sacramento, California; for Defendant-Appellant.

Katherine T. Lydon (argued), Assistant United States Attorney; Camil A. Skipper, Appellate Chief; Phillip A. Talbert, Acting United States Attorney; United States Attorney's Office, Sacramento, California; John M. Pellettieri Jr. (argued), Appellate Section, Criminal Division; Lisa H. Miller, Acting Deputy Assistant Attorney General; Kenneth A. Polite Jr., Assistant Attorney General; United States Department of Justice, Washington, D.C.; for Plaintiff-Appellee.

Vera Eidelman (argued), American Civil Liberties Union Foundation, New York, New York; Cecillia D. Wang, American Civil Liberties Union Foundation, San Francisco, California; Shilpi Agarwal, American Civil Liberties Union Foundation of Northern California Inc., San Francisco, California; for Amici Curiae American Civil Liberties Union and American Civil Liberties Union of Northern California.

**OPINION**

GOULD, Circuit Judge:

Helaman Hansen ("Hansen") appeals his conviction and 240-month sentence for twelve counts of mail fraud, three counts of wire fraud, and two counts of encouraging or inducing illegal immigration for private financial gain. On appeal, he argues that the district court improperly denied his motion to dismiss his convictions for the two counts of encouraging or inducing an alien to reside in the United States for financial gain (Counts 17 and 18) because 8 U.S.C. § 1324(a)(1)(A)(iv) is unconstitutional. We have jurisdiction under 28 U.S.C. § 1291 and hold that § 1324(a)(1)(A)(iv) is facially overbroad.[1]

**FACTS AND PROCEDURAL HISTORY**

Between at least October 2012 and September 2016, Hansen operated an organization called Americans Helping America Chamber of Commerce ("AHA"). AHA ran a program that purported to help undocumented immigrants become U.S. citizens through adult adoption (the "Program"). Hansen falsely told victims that many immigrants had become U.S. citizens through the Program. However, Hansen admitted to federal agents that no one had achieved U.S. citizenship through the Program, and it is not possible to become a U.S. citizen through adult adoption. Counts 17 and 18 were based on Hansen twice encouraging or inducing victims to overstay their visas.

---

[1] In a separate memorandum disposition filed simultaneously with this opinion, we affirm all other counts of conviction.

In Spring 2017, a jury found Hansen guilty of twelve counts of mail fraud, three counts of wire fraud, and two counts of encouraging or inducing unlawful immigration for private financial gain. The trial lasted eleven days and thirty-seven witnesses testified; witnesses included victims, former employees, investigators, and Hansen (who testified twice). At least 471 victims participated in the Program and each paid between $550 and $10,000. An FBI analyst testified that Hansen and AHA had more than $1.8 million in revenue.

On November 9, 2017, Hansen moved to dismiss Counts 17 and 18 on constitutional grounds. He argued that § 1324(a)(1)(A)(iv) is facially overbroad, void for vagueness, and unconstitutional as applied to him. The district court denied his motion. The district court sentenced Hansen to 240 months for each of the mail and wire fraud counts, and 120 months for each of the encouraging unlawful immigration for private financial gain counts, all to be served concurrently.

Hansen timely appealed. On appeal, Hansen and *amici* argue that § 1324(a)(1)(A)(iv) ("subsection (iv)") is unconstitutional for four reasons: it is (1) facially overbroad, (2) overbroad as applied to Hansen, (3) void for vagueness, and (4) a content- and viewpoint-based criminal prohibition of speech that cannot survive strict scrutiny.

## STANDARD OF REVIEW

"We review de novo the constitutionality of a statute." *United States v. Mohamud*, 843 F.3d 420, 432 (9th Cir. 2016).

**DISCUSSION**

Because we hold that subsection (iv) is facially overbroad, we do not reach Hansen and *amici's* other arguments. *See Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 258 (2002).

## 1.  Overbreadth Challenge

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. amend. I.  "The Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere." *Free Speech Coal.*, 535 U.S. at 244.  "The First Amendment doctrine of substantial overbreadth is an exception to the general rule that a person to whom a statute may be constitutionally applied cannot challenge the statute on the ground that it may be unconstitutionally applied to others." *Massachusetts v. Oakes*, 491 U.S. 576, 581 (1989).  Facial overbreadth challenges are permitted because an overly broad statute may chill the speech of individuals, including those not before the court.  *Id.*  There are two situations in which a facial overbreadth challenge can succeed: (1) when a party establishes that there is "no set of circumstances under which [the statute] would be valid or that the statute lacks any plainly legitimate sweep;" and (2) where "a substantial number of [the statute's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 472–73 (2010) (internal quotations and citations omitted).  It is clear from previous convictions under the statute cited by

the government,[2] and likely from Hansen's conduct here, that subsection (iv) has at least some "plainly legitimate sweep," so we focus our analysis on the second situation.

Hansen and *amici* argue that subsection (iv) encompasses a vast amount of protected speech related to immigration, including general immigration advocacy. By contrast, the government interprets subsection (iv) as a narrow prohibition on speech integral to criminal conduct, specifically solicitation and aiding and abetting.

As an initial matter, two courts of appeals, both in non-precedential decisions, have examined whether subsection (iv) is overbroad. In an unpublished decision, the Fourth Circuit held that subsection (iv) is not overbroad because it does not prohibit a substantial amount of protected speech, interpreting the provision as largely prohibiting criminal aiding and abetting. *See United States v. Tracy*, 456 F. App'x 267, 272 (4th Cir. 2011). A separate panel of this Court reached the opposite conclusion, recently holding that "[s]ubsection (iv) criminalizes a substantial amount of protected expression in relation to the statute's narrow legitimate sweep; thus, we hold that it is unconstitutionally overbroad in violation of the First Amendment." *United States v. Sineneng-Smith*, 910 F.3d 461, 485 (9th Cir. 2018) ("*Sineneng-Smith I*"). However, the Supreme Court vacated and remanded *Sineneng-Smith I* because "the appeals panel departed so drastically from the principle of party presentation as to constitute an abuse of discretion" by deciding the case on arguments originally raised by *amici*. *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1578

---

[2] *See, e.g.*, *United States v. Ndiaye*, 434 F.3d 1270 (11th Cir. 2006); *United States v. Yoshida*, 303 F.3d 1145 (9th Cir. 2002); *United States v. Castillo-Felix*, 539 F.2d 9 (9th Cir. 1976).

(2020). On remand, the panel affirmed the defendant's conviction under subsection (iv) without analyzing the overbreadth challenge. *See United States v. Sineneng-Smith*, 982 F.3d 766, 776 n.3 (9th Cir. 2020), *cert. denied*, 142 S. Ct 117 (2021). Although *Sineneng-Smith I* was vacated on other grounds, we conclude that much of its thorough analysis is persuasive on the overbreadth issue. We add our thoughts reinforcing that conclusion of overbreadth.

## 2. Statutory Construction

When analyzing an overbreadth challenge, courts first construe the statute. *United States v. Williams*, 553 U.S. 285, 293 (2008). Section 1324 states:

(a) Criminal penalties

(1)(A) Any person who—

. . .

(iv)     encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law

. . .

shall be punished as provided in subparagraph (B).

(B) A person who violates subparagraph (A) shall, for each alien in respect to whom such a violation occurs—

(i) in the case of ... violation of subparagraph (A)(ii), (iii), or (iv) in which the offense was done for the purpose of commercial advantage or private financial gain, be fined under Title 18, imprisoned not more than 10 years, or both . . . .

To ascertain the meaning of the operative words in subsection (iv), we begin with the meanings of "encourage" and "induce." In subsection (iv) "'to encourage' means 'to inspire with courage, spirit, or hope . . . to spur on . . . to give help or patronage to,'" and we have "equated 'encouraged' with 'helped.'" *United States v. Thum*, 749 F.3d 1143, 1147 (9th Cir. 2014). In a similar statutory provision, we defined "induce" as "to move by persuasion or influence." *United States v. Rashkovski*, 301 F.3d 1133, 1136 (9th Cir. 2002). These definitions accord with the plain meanings of encourage and induce. *See Thum*, 749 F.3d at 1147 (quoting Merriam Webster's Collegiate Dictionary); *Rashkovski*, 301 F.3d at 1136–37 (same). Encourage and induce are not part of a series of words that shed additional light on their meaning in subsection (iv). The doctrine of *noscitur a sociis* does not apply. *Cf. Williams*, 553 U.S. at 294–95 (applying *noscitur a sociis* to help determine the meaning of two words in a series of five words). As used in subsection (iv), encourage and induce can apply to both speech and conduct, a conclusion both parties acknowledge.

Next, we analyze the meaning of "alien." The parties disagree about whether subsection (iv) requires the object of encouragement or inducement to be a specific alien, or

whether it applies to actions directed at the general public. Subsection (iv) requires the encouragement or inducement of "an alien," so we agree with the government that the subsection requires the encouragement or inducement of a specific alien or aliens.

Subsection (iv) applies to situations where a defendant encouraged or induced an alien to "enter, or reside in the United States . . . in violation of law." It does not explicitly state whether it encompasses violations of criminal and or civil law. As it is generally not a violation of criminal law for an alien to remain in the United States, we are satisfied that subsection (iv) covers both criminal and civil violations. *See Arizona v. United States*, 567 U.S. 387, 407 (2012) ("As a general rule, it is not a crime for a removable alien to remain present in the United States.").

We also examine subsection (iv)'s surrounding provisions for textual indicators that may provide additional clues to its meaning. *See Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068, 1073 (9th Cir. 2016). Two textual indicators stand out. First, the other subsections criminalize a series of actions: "bring[ing]," "transport[ing]," "mov[ing]," "conceal[ing]," "harbor[ing]," or "shield[ing] from detection." *See* §§ 1324(a)(1)(A)(i)–(iii). As we noted above, subsection (iv) encompasses both speech and actions. The actions covered in the rest of § 1324(a)(1)(A) include such a wide range of conduct, though, that they leave little room for subsection (iv) to cover additional actions. "It is axiomatic that 'a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'" *Thum*, 749 F.3d at 1147 (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)). Therefore, the most natural meaning of subsection (iv) is that

it encompasses speech, which is not already covered by the other provisions.

The second textual indicator from the surrounding provisions is that § 1324(a)(1)(A) already includes an aiding and abetting provision. *See* § 1324(a)(1)(A)(v)(II). As the Supreme Court observed, "when 'Congress includes particular language in one section of a statute but omits it in another'—let alone in the very next provision—this Court 'presume[s]' that Congress intended a difference in meaning." *Loughrin v. United States*, 573 U.S. 351, 358 (2014) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). Subsection 1324(a)(1)(A)(v)(II), then, strongly suggests that subsection (iv) should not also be read as an aiding and abetting provision.

We therefore interpret subsection (iv) as prohibiting someone from (1) inspiring, helping, persuading, or influencing, (2) through speech or conduct, (3) one or more specified aliens (4) to come to or reside in the United States in violation of civil or criminal law.

## 3. Subsection (iv)'s Plainly Legitimate Sweep

The next question for us is whether subsection (iv) "criminalizes a substantial amount of protected expressive activity." *Williams*, 553 U.S. at 297. The government may restrict speech "in a few limited areas," including obscenity, defamation, fraud, incitement, and speech integral to criminal conduct. *Stevens*, 559 U.S. at 468 (internal citations omitted). Here, the government argues that subsection (iv) is limited to speech integral to criminal conduct, specifically solicitation and aiding and abetting.

This reading of subsection (iv), though, is not supported by the statutory text. As noted above, § 1324(a)(1)(A)(v)(II)

includes a separate provision for aiding and abetting, implying that Congress intended for the provisions to have different meanings. *See Loughrin*, 573 U.S. at 358. Interpreting subsection (iv) as different from aiding and abetting also avoids any related concerns that either it or § 1324(a)(1)(A)(v)(II) is superfluous. *See Corley*, 556 U.S. at 314. Further, the elements necessary for an aiding and abetting conviction in this Circuit require that the government prove elements not contained in subsection (iv), making subsection (iv) a poor aiding and abetting statute. Specifically, aiding and abetting requires someone to have committed an underlying criminal offense and for the accused to have assisted or participated in the commission of that offense. *Thum*, 749 F.3d at 1148–49.

Despite its flawed reading of subsection (iv), the government is surely correct that subsection (iv) encompasses some criminal conduct. The government states that prosecutions for procuring and providing fraudulent documents and identification information to unlawfully present aliens, assisting in unlawful entry, misleadingly luring aliens into the country for unlawful work, and smuggling activities "form the core" of subsection (iv)'s plainly legitimate sweep. The government provides a few examples of such successful prosecutions. Accepting the government's position that these prosecutions "form the core" of subsection (iv)'s plainly legitimate sweep, it is apparent that subsection (iv) has a relatively narrow legitimate sweep. Further, many of these crimes seem also to be encompassed by the other subsections of 1324(a)(1)(A), leaving subsection (iv)'s plainly legitimate sweep little independent work to do.

### 4. Protected Speech in Relation to Subsection (iv)'s Plainly Legitimate Sweep

On its own "[t]he prospect of crime . . . by itself does not justify laws suppressing protected speech." *Free Speech Coal.*, 535 U.S. at 245. An overbroad statute infringes on a substantial amount of constitutionally protected speech when there is "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court," *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984), or the statute is "susceptible of regular application to protected expression," *City of Houston v. Hill*, 482 U.S. 451, 467 (1987).

It is clear that subsection (iv) covers a substantial amount of protected speech. Many commonplace statements and actions could be construed as encouraging or inducing an undocumented immigrant to come to or reside in the United States. For example, the plain language of subsection (iv) covers knowingly telling an undocumented immigrant "I encourage you to reside in the United States." Such a statement is protected by the First Amendment. *See Williams*, 553 U.S. at 300 (explaining that the statement "I encourage you to obtain child pornography" is protected speech); *cf. United States v. Rundo*, 990 F.3d 709, 717 (9th Cir. 2021) ("[L]ike the Fourth Circuit, we conclude that the First Amendment protects speech tending to 'encourage' or 'promote' a riot."). Hansen and *amici* provide numerous other examples of protected speech prosecutable according to the plain text of the statute, including encouraging an undocumented immigrant to take shelter during a natural disaster, advising an undocumented immigrant about available social services, telling a tourist that she is unlikely to face serious consequences if she overstays her tourist visa,

or providing certain legal advice to undocumented immigrants.

Examples of protected speech encompassed by subsection (iv) include everyday statements or conduct that are likely repeated countless times across the country every day. Subsection (iv) "create[s] a criminal prohibition of alarming breadth" comparable to other statutory provisions the Supreme Court has held are facially overbroad. *See Stevens*, 599 U.S. at 474. For example, in *Stevens* the Court held that a statute prohibiting animal cruelty which encompassed depictions of hunting was facially overbroad, *see id.* at 474–76, while in *Free Speech Coalition* the Court held that a statute prohibiting the depiction of child pornography which encompassed movie adaptions of Romeo and Juliet and the movie "American Beauty" was facially overbroad, *see* 535 U.S. at 247–48.

By contrast, subsection (iv)'s plainly legitimate sweep, according to the government, is narrow and pales in comparison to the amount of protected expression that is encompassed by subsection (iv).

Nor are the examples of protected speech encompassed by subsection (iv) a mere hypothetical parade of horribles. The government has previously argued "that giving illegal aliens advice to remain in the United States while their status is disputed constitutes felonious conduct under § 1324(a)(1)(A)(iv) because it constitutes encouragement or inducement under the statute." *See United States v. Henderson*, 857 F. Supp. 2d 191, 203 (D. Mass. 2012). The chilling effect of subsection (iv) is substantial.

The government's other arguments to save subsection (iv) are unpersuasive. The canon of constitutional avoidance does not salvage the government's position. While it is true

that courts "construe[] [statutes] to avoid serious constitutional doubts," this canon only applies when a statute "is readily susceptible to such a construction." *Stevens*, 559 U.S. at 481 (quoting *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 884 (1997)) (internal quotation omitted). Here, the plain meaning of subsection (iv) does not permit the application of the constitutional avoidance canon. *See id.* ("[W]e will not rewrite a law to conform it to constitutional requirements for doing so would constitute a serious invasion of the legislative domain and sharply diminish Congress's incentive to draft a narrowly tailored law in the first place.") (simplified and internal citations omitted).

The government's argument that actual prosecutions show its narrow interpretation of subsection (iv) is unconvincing. Previous prosecutions do not change the plain meaning of a statute. Also, the government's interpretation of subsection (iv)'s reach is subject to change and is irrelevant: "the First Amendment protects against the government; it does not leave us at the mercy of *noblesse oblige*. We would not uphold an unconstitutional statute merely because the government promised to use it responsibly." *See Stevens*, 559 U.S at 480. Moreover, the government has actually carried out at least one troubling prosecution under subsection (iv): in *Henderson*, the government prosecuted a government employee under subsection (iv) for "advis[ing her undocumented] cleaning lady generally about immigration law practices and consequences." 857 F. Supp. 2d at 193. *Henderson* makes plain the ability of subsection (iv) to chill speech. We apply the overbreadth doctrine so that legitimate speech relating to immigration law shall not be chilled and foreclosed.

## CONCLUSION

We are mindful that invalidating subsection (iv) for overbreadth is "'strong medicine' that is not to be 'casually employed.'" *Williams*, 553 U.S. at 293 (quoting *Los Angeles Police Dept. v. United Reporting Publishing Corp.*, 528 U.S. 32, 39 (1999)). However, for the reasons we have set forth above, subsection (iv) is overbroad and unconstitutional. We vacate Hansen's convictions on Counts 17 and 18 and remand to the district court for resentencing.

**VACATED AND REMANDED IN PART.**