**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

LUIS MARIN,

*Defendant-Appellant*.

No.22-50154

D.C. No.
3:21-cr-01021-
DMS-2

OPINION

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

LUIS CHAVEZ,

*Defendant-Appellant*.

No.22-50155

D.C. No.
3:21-cr-01021-
DMS-1

Appeal from the United States District Court
for the Southern District of California
Dana M. Sabraw, Chief District Judge, Presiding

Argued and Submitted July 19, 2023
Pasadena, California

Filed January 17, 2024

Before:  Jacqueline H. Nguyen and Danielle J. Forrest, Circuit Judges, and Richard D. Bennett,[*] Senior District Judge.

Opinion by Judge Nguyen

## SUMMARY[**]

### Criminal Law

The panel affirmed two defendants' convictions for violating 46 U.S.C. § 70503(a)(1) of the Maritime Drug Law Enforcement Act, which prohibits possession of a controlled substance with intent to distribute while on board a covered vessel.

Defendants were arrested after the U.S. Coast Guard interdicted their speedboat, which was carrying at least 1,000 kilograms of cocaine, on the high seas off the coast of Ecuador. The vessel carried no nationality flag, but both defendants made a verbal claim of Ecuadorian nationality for the vessel. The Ecuadorian government neither confirmed nor denied nationality. The United States treated the vessel as stateless (i.e. without nationality) and exercised jurisdiction. Under § 70502(d)(1)(C), a vessel is stateless

---

[*] The Honorable Richard D. Bennett, United States Senior District Judge for the District of Maryland, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

when the master claims registry but "the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality."

Defendants challenged the government's jurisdiction, arguing the provision under which jurisdiction was exercised is unconstitutional because (1) Congress's authority to "define and punish . . . Felonies committed on the high Seas," U.S. Const. art. I, § 8, cl. 10 (the "Felonies Clause"), is limited by international law principles; and (2) § 70502(d)(1)(C), enacted under the Felonies Clause, conflicts with international law as to when a vessel may be treated as stateless.

Without deciding whether the Felonies Clause is constrained by international law, the panel held that the definition of "vessel without nationality" under § 70502(d)(1)(C) does not conflict with international law. The panel therefore affirmed the district court's denial of defendants' motion to dismiss the indictment.

## COUNSEL

Kenneth J. Troiano (argued), Kenneth J. Troiano Attorney at Law, San Diego, California; Martin G. Molina (argued), Law Office of Martin G. Molina, San Diego, California; for Defendant-Appellant.

Mark R. Rehe (argued), Nicole Bredariol, and P. Kevin Mokharti, Assistant United States Attorneys; Daniel E. Zipp, Assistant United States Attorney, Appellate Section Chief, Criminal Division; Randy S. Grossman, United States Attorney; United States Department of Justice, San Diego, California, for Plaintiff-Appellee.

## OPINION

NGUYEN, Circuit Judge:

Luis Marin and Luis Chavez ("defendants") appeal their convictions for violating 46 U.S.C. § 70503(a)(1) of the Maritime Drug Law Enforcement Act ("MDLEA"), which prohibits possession of a controlled substance with intent to distribute while on board a covered vessel. Defendants were arrested after the U.S. Coast Guard interdicted their "go-fast" speedboat, which was carrying at least 1,000 kilograms of cocaine, on the high seas off the coast of Ecuador. The vessel carried no nationality flag, but both Marin and Chavez made a verbal claim of Ecuadorian nationality for the vessel. The Ecuadorian government, however, neither confirmed nor denied nationality. The United States treated the vessel as stateless (i.e. without nationality) and exercised jurisdiction. *Id*. § 70503(b). Under § 70502(d)(1)(C), a vessel is stateless when the master claims registry but "the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." *Id.* § 70502(d)(1)(C).

Defendants challenge the government's jurisdiction, arguing the provision under which jurisdiction was exercised is unconstitutional because: first, Congress's authority to "define and punish . . . Felonies committed on the high Seas," U.S. Const. art. I, § 8, cl. 10 (known as the "Felonies Clause"), is limited by international law principles; and second, § 70502(d)(1)(C), enacted under the Felonies Clause, conflicts with international law as to when a vessel may be treated as stateless. We need not decide whether Congressional power under the Felonies Clause is implicitly constrained by international law because even assuming so,

§ 70502(d)(1)(C) is consistent with international law. We therefore affirm the district court's denial of defendants' motion to dismiss the indictment.

## I. Background

On March 18, 2021, the U.S. Coast Guard interdicted a go-fast vessel[1] on the high seas, about 655 nautical miles west of the Galapagos Islands, Ecuador. The vessel did not display any flags or indicia of nationality. Prior to boarding, Coast Guard officers saw visible packages on deck. Marin and Chavez were the only men on board, and they both identified themselves as master of the vessel and verbally claimed Ecuadorian nationality for the vessel. One of them spontaneously stated that there were drugs in the cargo hold.

The Coast Guard officers initiated a "forms exchange" under a bilateral United States-Ecuador agreement, whereby they contacted Ecuadorian authorities to confirm or deny registry of the vessel under their nationality. *See United States v. Alarcon Sanchez*, 972 F.3d 156, 160 (2d Cir. 2020). Ecuadorian authorities at first confirmed the nationality of the vessel and authorized full law enforcement boarding. The Coast Guard officers found a modified hatch in the deck that had been replaced with space containing a white powdery substance that field-tested positive for cocaine.

The Coast Guard officers then received a second response from Ecuadorian authorities stating that they could

---

[1] "A 'go-fast' boat is about forty feet long, typically made of fiberglass, with multiple outboard engines, and is often used to transport cocaine." *United States v. Gamboa-Cardenas*, 508 F.3d 491, 494 n.3 (9th Cir. 2007). "Coast Guard officials refer to such vessels as 'go-fast' boats because they can travel at high rates of speed, which makes them a favored vehicle for drug and alien smuggling operations." *United States v. Perlaza*, 439 F.3d 1149, 1153 n.2 (9th Cir. 2006).

neither "confirm nor deny nationality of the vessel." The Coast Guard proceeded to treat the vessel as stateless and arrested Marin and Chavez. The officers removed over 1,000 kilograms of cocaine from the vessel.

Marin and Chavez were indicted for conspiracy to distribute cocaine while on board a covered vessel, in violation of 46 U.S.C. §§ 70503(a)(1) & 70506(b) (Count 1), and two counts of possession of a controlled substance on board a vessel with intent to distribute, in violation of 46 U.S.C. § 70503(a)(1) (Counts 2 and 3). Pursuant to written plea agreements, Chavez entered guilty pleas to two counts of violating § 70503(a)(1) on September 29, 2021; and Marin entered guilty pleas to the same charges on November 3, 2021.[2]

On January 20, 2022, before defendants were sentenced, the First Circuit, in a now-withdrawn opinion, held that § 70502(d)(1)(C) of the MDLEA, the same provision at issue here, is unconstitutional. *See United States v. Dávila-Reye*s, 23 F.4th 153 (1st Cir. 2022). *Dávila-Reye*s first concluded that Congress's ability to define felonies on the high seas under the Felonies Clause is implicitly limited by international law. *Id.* at 173–86. That court then held that the § 70502(d)(1)(C) is unconstitutional because it conflicts with accepted definitions of a stateless vessel under international law. *Id.* at 186–95.

On April 21, 2022, in reliance on *Dávila-Reye*s, Marin filed a motion to withdraw his guilty plea, which Chavez joined. The district court denied defendants' motion to

---

[2] At sentencing, the government dismissed Count 1, the conspiracy charge, pursuant to the plea agreement, and agreed to dismiss Count 3 because the substance tested for cocaine rather than methamphetamine as charged.

withdraw their guilty pleas but invited them to renew the issue at sentencing by way of a motion to dismiss for lack of subject-matter jurisdiction.  Defendants did so, and on June 30, 2022, the district court denied the motions to dismiss.  The district court held that Congress's power to legislate under the Felonies Clause is not constrained by international law.  It did not decide the second question—whether 46 U.S.C. § 70502(d)(1)(C) violates international law.

The district court sentenced each defendant to 72 months of imprisonment, followed by 5 years of supervised release.[3]

Less than a week after defendants were sentenced, the First Circuit withdrew its panel opinion in *Dávila-Reyes* after voting to rehear the case en banc.  38 F.4th 288 (1st Cir. 2022).  Subsequently, in an en banc decision, the First Circuit affirmed the convictions on narrow grounds, holding that the government could have asserted jurisdiction because the vessel "was not authorized to fly the flag of any state," a standard "proper" under international law, and was thus stateless "for reasons independent of the vessel being the kind of vessel that § 70502(d)(1)(C) describes."  *United States v. Dávila-Reyes*, 84 F.4th 400, 417 (1st Cir. 2023) (citing *United States v. Rosero*, 42 F.3d 166, 171 (3d Cir. 1994)) ("Under international law, '[s]hips have the nationality of the State whose flag they are entitled to fly.'")

---

[3] The district court informed defendants of their right to appeal despite appellate-waiver provisions in their plea agreements.  On appeal, the government maintains that the appellate waivers should be enforced but, as it acknowledges, our circuit has held that "claims that the applicable statute is unconstitutional or that the indictment fails to state an offense are jurisdictional claims not waived by the guilty plea." *United States v. Caperell*, 938 F.2d 975, 977 (9th Cir. 1991) (quoting *United States v. Montilla*, 870 F.2d 549, 552 (9th Cir. 1989)) (cleaned up).  Accordingly, we address the merits of the appeal.

(quoting Convention on the High Seas art. 5(1), *opened for signature* Apr. 29, 1958, 13 U.S.T. 2312, 450 U.N.T.S. 82 (entered into force Sept. 30, 1962)).

## II.  Jurisdiction and Standard of Review

We have jurisdiction under 28 U.S.C. § 1291.  "We review de novo the constitutionality of a statute."  *United States v. Hansen*, 25 F.4th 1103, 1106 (9th Cir. 2022) (quoting *United States v. Mohamud*, 843 F.3d 420, 432 (9th Cir. 2016)).

## III. Discussion

The Constitution empowers Congress "[t]o define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations."  U.S. Const. art. I, § 8, cl. 10.  This constitutional provision contains three distinct grants of power: (1) to define and punish piracies committed on the high seas, (2) to define and punish felonies committed on the high seas (the Felonies Clause), (3) and to define and punish offenses against the law of nations.  *See United States v. Smith*, 18 U.S. (5 Wheat.) 153, 158–59 (1820).

Relevant here is the Felonies Clause, which provides the basis for the MDLEA.  *See United States v. Shi*, 525 F.3d 709, 721 (9th Cir. 2008) (holding that a federal statute is a valid exercise of the Felonies Clause if it "proscribes felony offenses and expressly applies to international waters").  The MDLEA makes it unlawful for an individual to "knowingly or intentionally manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance" on board "a vessel of the United States or a vessel subject to the jurisdiction of the United States."  46 U.S.C. § 70503(a)(1), (e)(1).  That prohibition "applies even though

the act is committed outside the territorial jurisdiction of the United States." *Id*. § 70503(b). A vessel "subject to the jurisdiction of the United States" includes "a vessel without nationality." *Id*. § 70502(c)(1)(A). A vessel is considered "without nationality" under the MDLEA under multiple circumstances, including when the master makes a claim of registry, but the country of claimed registry "does not affirmatively and unequivocally assert that the vessel is of its nationality."[4] *Id*. § 70502(d)(1)(C).

Defendants argue that Congress's Felonies-Clause power is bounded by international law jurisdictional principles, and the definition under the MDLEA goes beyond what international law deems a stateless vessel (i.e., a vessel without nationality).

Without deciding whether the Felonies Clause is constrained by international law, we hold that the definition of "vessel without nationality" under 46 U.S.C. § 70502(d)(1)(C) does not conflict with international law. Accordingly, we uphold defendants' convictions under the MDLEA. Although the district court did not reach this issue, we may affirm on any basis, "whether or not relied upon by the district court." *Muniz v. UPS, Inc.*, 738 F.3d 214, 219 (9th Cir. 2013).

---

[4] Two other situations enumerated, non-exhaustively, by the MDLEA, are when the master makes a claim of registry, but the nation in question denies the claim, *id*. § 70502(d)(1)(A), and when "the master or individual in charge fails," in response to questioning by U.S. law enforcement, "to make a claim of nationality or registry for th[e] vessel," *id*. § 70502(d)(1)(B).

## A. Our prior decisions upholding the constitutionality of the MDLEA do not answer the issue defendants raise.

Although we have previously upheld the constitutionality of the MDLEA, those cases do not dictate the results here, as the government suggests, because we have not previously addressed the precise issues defendants raise.

We have noted that "[a]s an exercise of congressional power pursuant to Article I, Section 8, Clause 10, this court clearly has held that the MDLEA is constitutional." *United States v. Moreno-Morillo*, 334 F.3d 819, 824 (9th Cir. 2003) (citing *United States v. Davis,* 905 F.2d 245, 248 (9th Cir. 1990)). In *Moreno-Morillo*, the vessel was deemed stateless because the Colombian government neither confirmed nor denied that the ship was Colombian. *Id.* at 831. Defendants argued that the MDLEA was unconstitutional because drug-trafficking is "not among the felonies and piracies on the high seas that Congress is empowered to define." *Id.* at 824. We rejected this argument, holding that the prohibition of possession of drugs with intent to distribute on certain vessels was within Congress's "power to 'define and punish piracies and felonies committed on the high seas.'" *Id.* (quoting *United States v. Aikins,* 946 F.2d 608, 613 (9th Cir. 1990)).

The government acknowledges that *Moreno-Morillo* did not address the same challenge to § 70502(d)(1)(C) that defendants raise but argues that its upholding of the constitutionality of the MDLEA on "facts having the exact same jurisdictional basis" should foreclose defendants' constitutional challenge here. However, "[q]uestions which merely lurk in the record, neither brought to the attention of

the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) (quoting *Webster v. Fall,* 266 U.S. 507, 511 (1925)). Although the government argues that the constitutional jurisdictional challenge raised by defendants is simply a matter of "arguments [that] have been characterized differently or more persuasively by a new litigant," *United States v. Ramos-Medina*, 706 F.3d 932, 939 (9th Cir. 2013), no prior Ninth Circuit panel has addressed whether the MDLEA's definition of "stateless vessel" conflicts with international law in violation of the Constitution.

The government also highlights that we held in *Davis* that "compliance with international law does not determine whether the United States may apply the [MDLEA] to [defendant's] conduct." *Davis*, 905 F.2d at 248. But *Davis* addressed a different question than the one presented here. In *Davis*, we upheld the constitutionality of the MDLEA's extraterritorial application to the defendant because that application satisfied the "[o]nly two restrictions . . . on giving extraterritorial effect to Congress' directives": (1) Congress must "make clear its intent to give extraterritorial effect to its statutes," and (2) application of the statute to the acts in question must not violate due process. *Id.* (citations omitted). We rejected the defendant's argument that compliance with international law determines whether the United States may apply the MDLEA to his conduct, as "[i]nternational law principles, standing on their own, do not create substantive rights or affirmative defenses for litigants in United States courts." *Id.* at 248 & n.1 (citing *United States v. Thomas*, 893 F.2d 1066, 1068–69 (9th Cir. 1990)).

Unlike in *Davis*, defendants do not argue here that "[i]nternational principles, standing on their own . . . create

substantive rights or affirmative defenses." *Id.* at 248 n.1. Rather, they argue that Congress's powers to enact laws pursuant to the Felonies Clause is constrained by international law, and further that the MDLEA's definition of statelessness is inconsistent with international law— issues which we have never before addressed.[5] We turn, then, to the merits of defendants' argument.

**B. Section 70502(d)(1)(C)'s definition of a "vessel without nationality" is not inconsistent with international law.**

As defendants acknowledge, international law allows jurisdiction over stateless vessels. *See, e.g.*, *United States v. Rubies*, 612 F.2d 397, 403 (9th Cir. 1979) ("In the interest of order on the open sea, a vessel not sailing under the maritime flag of a State enjoys no protection whatever, for the freedom of navigation on the open sea is freedom for such vessels only as sail under the flag of a State.") (quoting 1 L.F.L. Oppenheim, *International Law* § 546 (7th ed. 1948)); *United States v. Aybar-Ulloa*, 987 F.3d 1, 7–8 (1st Cir.). While "foreign flag vessels are generally accorded the right of undisturbed navigation on the high seas," *Rubies*, 612 F.2d at 402, stateless vessels are "international pariahs," *United States v. Caicedo*, 47 F.3d 370, 372 (9th Cir. 1995). Stateless vessels "represent 'floating sanctuaries from authority' and constitute a potential threat to the order and stability of navigation on the high seas." *United States v.*

---

[5] In fact, *Davis*, which involved a foreign-flagged vessel, suggested only that international law could be a "rough guide" for a due process analysis, *id*. at 249 n.2, an analysis we declined to extend to stateless vessels, given the "radically different treatment afforded to stateless vessels as a matter of international law." *United States v. Caicedo*, 47 F.3d 370, 372 (9th Cir. 1995). Thus, *Davis* responds to neither of the two issues defendants here raise.

*Marino-Garcia*, 679 F.2d 1373, 1382 (11th Cir. 1982) (quoting Herman Meyers, *The Nationality of Ships* 318 (1967)). "By attempting to shrug the yoke of any nation's authority, they subject themselves to the jurisdiction of all nations." *Caicedo*, 47 F.3d at 372.

A ship can only sail under the flag of one country. U.N. Convention on the Law of the Sea art. 92(1), *opened for signature* Dec. 10, 1982, 1833 U.N.T.S. 397 (entered into force Nov. 16, 1994) ("UNCLOS");[6] Convention on the High Seas art. 6(1), *opened for signature* Apr. 29, 1958, 13 U.S.T. 2312, 450 U.N.T.S. 82 (entered into force Sept. 30, 1962) ("GCHS");[7] *Aybar-Ulloa*, 987 F.3d at 5 ("[E]very vessel must sail under the flag of one, and only one, state."). Each country is responsible for determining "the conditions for the grant of its nationality to ships, for the registration of ships in its territory, and for the right to fly its flag." GCHS, art. 5(1). And each country "must effectively exercise its jurisdiction and control in administrative, technical and social matters over ships flying its flag." *Id.*

International law and practice recognize three situations when a vessel is, or becomes, a stateless vessel. *See* Ted M. McDorman, *Stateless Fishing Vessels, International Law and the U.N. High Seas Fisheries Conference*, 25 J. Mar. L. & Com. 531, 533 (Oct. 1994). First, a ship that sails under the flags of two or more nations using them as a matter of

---

[6] While the Senate has never ratified the UNCLOS, it was signed by the President and is generally recognized by the United States as reflecting customary international law. *United States v. Hasan*, 747 F. Supp. 2d 599, 635 (E.D. Va. 2010) ("[W]ith the exception of its deep seabed mining provisions, the United States has consistently accepted UNCLOS as customary international law for more than 25 years.").

[7] The United States ratified the GCHS in 1961.

convenience may be treated stateless. UNCLOS, art. 92(2); GCHS, art. 6(2). Second, a vessel may be stateless where the nation of the vessel is not recognized by the questioning state. McDorman, *supra*, at 534 (citing *Molvan v. Att'y-Gen. for Palestine* [1948] AC 351 (PC)). Third, a vessel is stateless "if it has been deprived of the use of a flag" by the country the vessel claims as its flag or if "the vessel's claimed State of nationality denies that such is the case." *Id.*

Defendants argue that outside of these circumstances, the United States may not broaden the definition of a stateless vessel. But under the *Lotus* principle:

> Far from laying down a general prohibition to the effect that States may not extend the application of their laws and the jurisdiction of their courts to persons, property and acts outside their territory, [international law] leaves them in this respect a wide measure of discretion which is only limited in certain cases by prohibitive rules; as regards other cases, every State remains free to adopt the principles which it regards as best and most suitable.
>
> . . .
>
> [A]ll that can be required of a State is that it should not overstep the limits which international law places upon its jurisdiction; within these limits, its title to exercise jurisdiction rests in its sovereignty.

*S.S. Lotus* (1927), PCIJ (Ser. A) No. 9, at 19. Understanding the purpose of international law to be "regulat[ing] the

relations between . . . co-existing independent communities," the Permanent Court of International Justice ("PCIJ") found "no rule of international law" regarding the specific jurisdictional question there at issue, and thus concluded the disputed exercise of criminal jurisdiction was not "contrary to the principles of international law." *Id*. at 18, 30–31. Here, "no rule of international law" addresses whether a state may consider a vessel to be without nationality and exercising jurisdiction in the circumstances set forth in § 70502(d)(1)(C).[8] Thus, doing so is not contrary to international law under the *Lotus* principle.

Defendants argue that there is a rule of international law which § 70502(d)(1)(C) "displaces." *Dávila-Reye*s, 23 F.4th at 187. They argue that an oral claim to nationality constitutes a prima facie showing of nationality, which can only be rebutted by a denial—rather than merely a failure to confirm or deny—by the claimed flag state. But no rule of international law requires this approach. Indeed, the case defendants cite for this proposition clarifies that it "is not enough that a vessel have a nationality; she must claim it *and be in a position to provide evidence of it*." United States v.

---

[8] One international law scholar has stated the "absence of any state claiming allocation" of a ship is a ground for statelessness, but the factual circumstances upon which the statement was based are distinguishable. *See* HERMAN MEYERS, THE NATIONALITY OF SHIPS 317 (1967) (discussing the *Lucky Star*, which "could be regarded as stateless on two grounds: fraudulent use of a flag and . . . absence of any state claiming allocation," where the ship "displayed the flag of Lebanon, but had no registration papers" to prove such nationality, and the *Lucky Star*'s operators "produced temporary registration certificates, issued by the Consul-General of Guatemala [which] were not valid under Guatemalan law"). This discussion does not disrupt—and tends to support—the conclusion that jurisdiction under § 70502(d)(1)(C) is not contrary to international law.

*Matos-Luchi*, 627 F.3d 1, 6 (1st Cir. 2010) (emphasis added) (citing Andrew W. Anderson, *Jurisdiction over Stateless Vessels on the High Seas: An Appraisal Under Domestic and International Law,* 13 J. MAR. L. & COM. 323, 341 (1982)). Defendants do not identify a rule of international law requiring an oral claim to nationality be rebuttable only by a denial by the claimed flag state.[9]  In fact, such a rule could lead to the untenable result that neither the boarding state nor the claimed flag state have jurisdiction over a vessel so long as the claimed flag state does not confirm or deny nationality—undermining international law's role of facilitating the "achievement of common aims."[10]  *S.S. Lotus* (1927), PCIJ (Ser. A) No. 9, at 18.  We have no reason to conclude that exercising jurisdiction in the circumstances set forth in § 70502(d)(1)(C) "overstep[s] the limits which international law places upon . . . jurisdiction."  *Id*. at 19.

Defendants argue that the United States can simply seek the permission of the claimed flag state if it can neither confirm nor deny the claimed nationality of the vessel, but that is a policy decision for Congress to make, not one that

---

[9]  Defendants also cite out-of-circuit decisions to support their proposition, but these cases are inapposite, because they involve claims of nationality where government action was predicated on statutes requiring a vessel be American, not stateless. *United States v. Bustos-Guzman*, 685 F.2d 1278, 1280 (11th Cir. 1982) (stating ship's U.S. flag was "prima facie proof" of nationality, and citing the flag, its U.S. registry, and U.S. owner as sufficient evidence to establish the vessel was American (citing *The Chiquita*, 19 F.2d 417, 418 (5th Cir. 1927) (stating ship's Honduran flag is "prima facie proof" of nationality, and finding it was "immaterial" that the ship may not have proper Honduran registry, because there was "no doubt that the vessel was completely divested of her American nationality"))).

[10] *See also* An Hertogen, *Letting* Lotus *Bloom*, 26 EUR. J. INT'L L. 901, 912 (2015).

is required by international law.  It is not our role to create new international legal principles by inference, as defendants attempt to do by arguing that "[b]y implication, [a vessel] is not stateless under any other circumstance[s]" than the ones already defined by international law.[11]  Our conclusion is buttressed by the numerous district courts that have all rejected challenges like the one here since the now-withdrawn *Dávila-Reyes* decision was issued.  *See, e.g.*, *United States v. Pierre*, No. 21-CR-20450, 2022 WL 3042244, at \*10 (S.D. Fla. Aug. 1, 2022) (collecting cases).

Because there is no rule of international law speaking to this jurisdictional question, the United States does "not overstep the limits which international law places upon its jurisdiction," *S.S. Lotus* (1927), PCIJ (Ser. A) No. 9, at 19, in choosing to treat vessels as stateless where the claimed nation responds that it can neither confirm nor deny the registry.  We therefore need not address defendants' argument that Congress's powers to enact laws pursuant to the Felonies Clause is constrained by international law to conclude that defendants' challenge to § 70502(d)(1)(C) of the MDLEA fails.  We affirm defendants' convictions.

**AFFIRMED.**

---

[11] Indeed, after the PCIJ concluded in *S.S. Lotus*, in relation to the specific issue in that case, that "there is no rule of international law in regard to collision cases to the effect that criminal proceedings are exclusively within the jurisdiction of the State whose flag is flown," *S.S. Lotus* (1927), PCIJ (Ser. A) No. 9, at 30, the international community developed a rule precisely to that effect.  *See* UNCLOS, Art. 97; GCHS, Art. 11.