**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

J. GUADALUPE MARQUEZ-REYES,
*Petitioner*,

v.

MERRICK B. GARLAND, Attorney
General,
*Respondent.*

No. 17-71367

Agency No.
A205-490-228

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 11, 2020
Seattle, Washington

Filed June 14, 2022

Before: Marsha S. Berzon and Eric D. Miller, Circuit
Judges, and Sharon L. Gleason,[*] District Judge.

Opinion by Judge Miller;
Dissent by Judge Berzon

---

[*] The Honorable Sharon L. Gleason, United States District Judge for the District of Alaska, sitting by designation.

## SUMMARY[**]

### Immigration

Denying J. Guadalupe Marquez-Reyes's petition for review of a decision of the Board of Immigration Appeals, the panel held that: 1) 8 U.S.C. § 1182(a)(6)(E)(i), the statute that makes a noncitizen removable or ineligible for certain relief due to alien smuggling, is not facially overbroad under the First Amendment, is not unconstitutionally vague, and does not violate equal protection; and 2) the agency did not abuse its discretion in denying administrative closure.

Applicants for cancellation of removal must establish that they have been "of good moral character," for the previous ten years, and section 1101(f)(3) defines "good moral character," to exclude anyone described in the alien-smuggling provision at section 1182(a)(6)(E)(i). Marquez-Reyes conceded that he "encouraged" his son to enter the country illegally, and was found ineligible for cancellation on that ground.

In challenging section 1182(a)(6)(E)(i) on First Amendment grounds, Marquez-Reyes did not argue that he engaged in protected speech (he did not say what he actually said or did); rather, he argued that the section was facially overbroad. The panel first analyzed the text of section 1182(a)(6)(E)(i), which renders inadmissible any alien who "knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law." Marquez-Reyes urged the court

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

to apply the ordinary meaning of "encourage," arguing that this definition encompasses a wide range of protected speech.

However, the panel held that "encouraged" here refers to the narrower, criminal law sense of soliciting or aiding and abetting criminal conduct. The panel explained that its interpretation was supported by: 1) the structure of the section—the other verbs in the provision connote complicity in a specific criminal act and, by contrast, the broad meaning of "encourage" that Marquez-Reyes advocated did not fit naturally with those verbs; 2) the title of section — "Smugglers"—and the fact that courts have interpreted smuggling to require affirmative assistance; 3) the remainder of the section—that the object of the encouragement must be an alien's entry "in violation of law" —and the fact that the statute applies only when the conduct has been undertaken "knowingly" (thus reinforcing that the statute targets involvement in specific criminal conduct); and 4) prior cases addressing section 1182(a)(6)(E)(i).

The panel rejected Marquez-Reyes's contention that its interpretation creates overlap with the other verbs in the section, explaining that, because no interpretation could avoid excess language here, the canon against superfluity had limited force. Further, the panel explained that, even if the panel had doubt about its interpretation, the canon of constitutional avoidance would militate in its favor.

Next, the panel considered whether section 1182(a)(6)(E)(i) covers a substantial amount of protected speech. The panel concluded that a significant portion of speech that might fall within the statute's scope is unprotected. The panel explained that: 1) because the section targets conduct that solicits, aids, or abets the

commission of a federal crime, it has many legitimate applications that do not involve speech at all (such as paying smugglers); 2) to the extent that cases under the section have involved speech, that speech was accompanied by some affirmative act; and 3) it was telling that Marquez-Reyes was unable to identify any instance in which a court has applied the section in the manner that he advocated.

The panel also concluded that the statute does not reach mere advocacy because it requires some specific intent to facilitate the commission of another's crime. The panel distinguished this case from recent cases where this court found the term "encourage" in other statutes to be facially overbroad: *United States v. Hansen*, 25 F.4th 1103 (9th Cir. 2022), and *United States v. Rundo*, 990 F.3d 709 (9th Cir. 2021) (per curiam).

Next, the panel rejected Marquez-Reyes's argument that section 1182(a)(6)(E)(i) is unconstitutionally vague. The panel concluded that his concession that he "encouraged" his son's unlawful entry foreclosed his facial challenge because an individual who has engaged in conduct that is clearly covered by a statute cannot complain of vagueness as applied to others.

The panel also rejected Marquez-Reyes's equal protection challenge, which was based on the fact that waivers of the alien-smuggling bar are available for certain noncitizens seeking admission or adjustment of status, but not for those seeking cancellation. Applying rational basis scrutiny, the panel observed that (in a different context), this court concluded that it was rational for Congress to allow such waivers only to persons who have complied with immigration laws, and not to those who entered without inspection and then attempted to smuggle others.

Finally, the panel held that the agency did not abuse its discretion in denying administrative closure, explaining that the agency considered the applicable factors and explained its conclusions.  The panel also rejected Marquez-Reyes's reliance on a BIA case that was decided after the IJ's decision and noted that the BIA's de novo review made any error by the IJ harmless.

Dissenting, Judge Berzon wrote that the majority's holding is inconsistent with *Rundo* and *Hansen* and illogical on its own terms.  She also wrote that, construed in accordance with its ordinary meaning, "encouraged" includes a wide swath of constitutionally protected speech. Judge Berzon explained that *Rundo* and *Hansen* have demonstrated that a statutory provision that penalizes "encouraging" someone to do something runs a serious risk of chilling speech by covering a substantial amount of protected speech, compared to its legitimate sweep.  The majority strained to avoid this problem by interpreting "encouraged," improbably, to cover only speech closely connected to a crime—but, as Judge Berzon explained, not closely enough to survive First Amendment invalidity. Because, in Judge Berzon's view, the majority's approach was an untenable statutory interpretation and also one insufficient to save the statute from invalidity, she would instead adopt *Rundo*'s solution and sever the word "encouraged" from section 1182(a)(6)(E)(i).

**COUNSEL**

Benjamin E. Stein (argued) and Henry Cruz, Rios & Cruz P.S., Seattle, Washington, for Petitioner.

Craig A. Newell Jr. (argued), Trial Attorney; Emily Anne Radford, Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

MILLER, Circuit Judge:

J. Guadalupe Marquez-Reyes, a native and citizen of Mexico, petitions for review of a decision of the Board of Immigration Appeals denying his request to administratively close his removal proceedings. An immigration judge ordered Marquez-Reyes removed from the United States after he admitted that he had committed acts that disqualified him from obtaining cancellation of removal: He twice "encouraged" his eldest son to enter the United States illegally. Marquez-Reyes now argues that the "encouraged" component of the alien-smuggling statute, 8 U.S.C. § 1182(a)(6)(E)(i), is unconstitutionally overbroad under the First Amendment, that it is unconstitutionally vague, and that it violates the equal-protection component of the Due Process Clause. He also contends that the agency abused its discretion in denying his motion for administrative closure. Because Marquez-Reyes's constitutional challenges lack merit and the agency did not abuse its discretion, we deny the petition.

I

Marquez-Reyes entered the United States without inspection in 1998 and has lived here ever since. In 2013, the government opened removal proceedings against him. Marquez-Reyes conceded that he was removable but requested cancellation of removal. At his final hearing, however, Marquez-Reyes admitted that he was ineligible for cancellation of removal because he had twice "encouraged" his son (who is not a United States citizen) to enter the country illegally, once in October 2010 and again in February 2011. Marquez-Reyes did not say—and the record does not otherwise reveal—just what he said or did by way of encouragement. Nevertheless, the admission was legally significant. Only those who have been "of good moral character" for the previous ten years are eligible for cancellation of removal. 8 U.S.C. § 1229b(b)(1)(B). But "good moral character" is defined to exclude anyone described in section 1182(a)(6)(E), *see id.* § 1101(f)(3); and that provision, in turn, provides for the inadmissibility of any alien who "knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law," *id.* § 1182(a)(6)(E)(i).

To avoid that statutory barrier, Marquez-Reyes asked the immigration judge to administratively close his removal proceedings for approximately five years so that he could accrue the necessary time to become eligible for a finding of "good moral character" and thereby qualify for cancellation of removal. The immigration judge denied his request and ordered him removed. The Board of Immigration Appeals dismissed his appeal.

II

We begin with Marquez-Reyes's claim that section 1182(a)(6)(E)(i) is facially overbroad under the First Amendment. We review de novo whether the statute is constitutional. *Ledezma-Cosino v. Sessions*, 857 F.3d 1042, 1045–46 (9th Cir. 2017) (en banc).

Marquez-Reyes does not argue that he engaged in constitutionally protected speech, such that applying the statute to him would violate the First Amendment. He could not make such an argument because he has carefully avoided describing what his speech was, or even whether he engaged in speech at all. Instead, all he has told us is that he "encouraged" his son to enter the United States illegally—and, as we will see, the parties disagree about what "encouraged" means in section 1182(a)(6)(E)(i).

In most contexts, "a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court." *Los Angeles Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 38 (1999) (quoting *New York v. Ferber*, 458 U.S. 747, 767 (1982)). That rule reflects the important constitutional principles "that under our constitutional system courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws" and that ruling on the constitutionality of a statute is "justified only out of the necessity of adjudicating rights in particular cases between the litigants brought before the Court." *Broadrick v. Oklahoma*, 413 U.S. 601, 610–11 (1973); *see United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1586–87 (2020) (Thomas, J., concurring).

Nevertheless, the Supreme Court has recognized a limited exception for certain First Amendment claims. Under the doctrine of overbreadth, litigants may be "permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick*, 413 U.S. at 612; *see Ferber*, 458 U.S. at 768–69.

But the Court has repeatedly cautioned that "overbreadth is 'strong medicine' that is not to be 'casually employed.'" *Sineneng-Smith*, 140 S. Ct. at 1581 (quoting *United States v. Williams*, 553 U.S. 285, 293 (2008)). A statute is not overbroad just because "one can conceive of some impermissible applications." *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Instead, its overbreadth must "be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292; *accord Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008). There must, in other words, be "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Acosta v. City of Costa Mesa*, 718 F.3d 800, 811 (9th Cir. 2013) (quoting *Taxpayers for Vincent*, 466 U.S. at 800–01). That standard is not satisfied here.

## A

We start by construing the statute, as "it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *Williams*, 553 U.S. at 293. Our analysis begins with the text. *Hall v. United States Dep't of Agric.*, 984 F.3d 825, 837 (9th Cir. 2020). Section

1182(a)(6)(E)(i) provides that "[a]ny alien who at any time knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law is inadmissible." The parties' dispute turns on the meaning of "encouraged" in that list of verbs.

The Immigration and Nationality Act does not define "encouraged," and normally, when a statute does not define a term, we apply the term's ordinary meaning. *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 47 (1989). Marquez-Reyes urges us to do so here and to construe "encourage" based on a dictionary definition: "inspire with courage, spirit, or hope . . . spur on . . . give help or patronage to." *Merriam Webster's Collegiate Dictionary* 410 (11th ed. 2014); *see also United States v. Thum*, 749 F.3d 1143, 1147 (9th Cir. 2014). That definition, he observes, encompasses a wide range of constitutionally protected speech, such as an alien's ordinary conversations with overseas relatives ("I wish you were here with me.") or public demonstrations supporting immigrant rights ("We welcome all immigrants.").

Sometimes, however, statutory context indicates that a word is not used in its ordinary sense but instead carries a technical or specialized meaning. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 73 (2012). The word "encouraged" has such a meaning in criminal law, where it refers to solicitation or aiding and abetting. *See, e.g.*, *Cox v. Louisiana*, 379 U.S. 559, 563 (1965) ("A man may be punished for encouraging the commission of a crime."). Under the Model Penal Code, for example, a person is guilty of criminal solicitation "if with the purpose of promoting or facilitating its commission he commands, *encourages* or requests another person to engage

in specific conduct that would constitute such crime." Model Penal Code § 5.02(1) (emphasis added). A number of States have similar laws imposing criminal liability on those who knowingly or purposefully "encourage" the commission of a specific criminal act. *See, e.g.*, Ariz. Rev. Stat. § 13-1002(A); Haw. Rev. Stat. § 705-510(1); Idaho Code § 18-2001; Mont. Code § 45-4-101(1); Wash. Rev. Code § 9A.08.020(3)(a)(i). Reflecting that understanding, *Black's Law Dictionary* defines "encourage" as "[t]o instigate; to incite to action; to embolden; [or] to help," with a cross-reference to the definition for "aid and abet." *Black's Law Dictionary* 667 (11th ed. 2019); *see id.* at 5 (defining "abet" as "[t]o aid, *encourage*, or assist (someone), esp. in the commission of a crime" (emphasis added)); *Reves v. Ernst & Young*, 507 U.S. 170, 178 (1993) ("'[A]id and abet' 'comprehends all assistance rendered by words, acts, encouragement, support, or presence.'" (quoting *Black's Law Dictionary* 68 (6th ed. 1990))); *Nye & Nissen v. United States*, 168 F.2d 846, 854 (9th Cir. 1948) ("To 'instigate' means to aid, promote, or encourage the commission of an offense. One of its synonyms is 'abet.'" (citation omitted)).

The structure of section 1182(a)(6)(E)(i) convinces us that Congress used "encourage" in that narrower, criminal-law sense of solicitation or aiding and abetting. Specifically, that interpretation is supported by the *noscitur a sociis* canon, which instructs that "a word is known by the company it keeps." *McDonnell v. United States*, 136 S. Ct. 2355, 2368 (2016) (quoting *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961)); *see Williams*, 553 U.S. at 294 ("[A] word is given more precise content by the neighboring words with which it is associated."). The verbs that accompany "encouraged"—namely, "induced, assisted, abetted, or aided"—connote complicity in a specific criminal act. "Aided" and "abetted," in particular, describe textbook

criminal facilitation; and "inducement," likewise, is the "enticement or urging of another person to commit a crime." *Black's Law Dictionary* 926 (11th ed. 2019). The remaining verb, "assisted," is susceptible to "multiple and wide-ranging meanings" when considered in isolation, but in context, can reasonably be understood in a manner consistent with the other verbs in the statute. *See Williams*, 553 U.S. at 294. By contrast, the broad meaning of "encourage" that Marquez-Reyes advocates does not fit naturally with those verbs.

Section 1182(a)(6)(E)'s title—"Smugglers"—further supports our interpretation. *See INS v. National Ctr. for Immigrants' Rts., Inc.*, 502 U.S. 183, 189 (1991) ("[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text."). In *Tapucu v. Gonzales*, 399 F.3d 736 (6th Cir. 2005), the Sixth Circuit noted that "smugglers" refers to those who "import or export secretly contrary to law . . . with a fraudulent intent." *Id.* at 740 (emphasis omitted) (quoting *Webster's Third New International Dictionary* 2153 (2002)); *see id.* at 741–42 (collecting smuggling cases). Based in part on the provision's title, the court concluded that section 1182(a)(6)(E)(i) requires "some form of affirmative assistance in the alien's illegal entry, something more than merely driving to a border station and presenting valid documents to customs officials." *Id.* at 740. It would be anomalous if the individuals hypothesized by Marquez-Reyes—those who merely participate in pro-immigrant rallies or suggest that their children come to the United States—were "smugglers" under the statute "without committing a single affirmative illicit act." *Id.* at 741.

The remainder of section 1182(a)(6)(E)(i) reinforces our conclusion that the statute targets involvement in specific criminal conduct. Not just any "encouragement" is

prohibited: The object of the encouragement must be an alien's entry into the United States "in violation of law," indicating that the statute proscribes only conduct that aids criminal activity. In addition, the statute applies only when the conduct has been undertaken "knowingly." The most natural reading is that the scienter requirement imposed by the word "knowingly" applies to "every element" of the statute. *See Williams*, 553 U.S. at 294; *see also Rehaif v. United States*, 139 S. Ct. 2191, 2196–97 (2019); *United States v. Meek*, 366 F.3d 705, 721 (9th Cir. 2004). To sustain a charge of inadmissibility, then, the government must prove not only that the violator "knowingly encouraged, induced, assisted, abetted, or aided" another alien to enter or try to enter, but also that the violator knew the entry would be "in violation of law." This indicates that the statute covers the intentional solicitation or facilitation of a specific crime, but not political advocacy of the sort imagined by Marquez-Reyes.

Our interpretation is consistent with prior cases addressing section 1182(a)(6)(E)(i). Although we have not specifically considered the meaning of "encouraged" in this statute, we have recognized that the "alien smuggling provisions of the [Immigration and Nationality Act] have been generally analyzed as aiding and abetting statutes" and that section 1182(a)(6)(E)(i), in particular, "imports" the "traditional criminal law aiding and abetting doctrine." *Altamirano v. Gonzales*, 427 F.3d 586, 594 (9th Cir. 2005). Consistent with that doctrine, in *Altamirano*, we held that "[t]he plain meaning of this statutory provision requires an affirmative act of help, assistance, or encouragement." *Id.* at 592; *accord Tapucu*, 399 F.3d at 742–43 (holding that an alien is not inadmissible under section 1182(a)(6)(E)(i) if the alien did not perform an affirmative act of assistance).

Marquez-Reyes points to *Thum*, in which we noted that "encourage" has a broad ordinary meaning. 749 F.3d at 1147. But in that case, which involved a different immigration statute, we ultimately concluded that the statutory context foreclosed "reading 'encourages' . . . as broadly" as its ordinary meaning might otherwise suggest— a mode of analysis similar to the one we employ today. *Id.*

Marquez-Reyes also argues that our interpretation of "encouraged" creates overlap with the other verbs in section 1182(a)(6)(E)(i). He is of course correct that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)). But some degree of statutory redundancy is not unusual. *See Marx v. General Revenue Corp.*, 568 U.S. 371, 385 (2013) ("The canon against surplusage is not an absolute rule."). And under any interpretation of section 1182(a)(6)(E)(i), some degree of redundancy is inevitable. There is, for example, significant or complete overlap between the terms "assisted" and "aided." And "aided" and "abetted" in the criminal context are "frequently used interchangeably," even if they are not entirely synonymous. *Black's Law Dictionary* 87 (11th ed. 2019) (quoting 1 Charles E. Torcia, *Wharton's Criminal Law* § 29, at 181 (15th ed. 1993)). Because "no interpretation . . . avoids excess language" in section 1182(a)(6)(E)(i), the canon against superfluity has limited force here. *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 106 (2011).

That is not to say that the list of verbs consists entirely of synonyms or that we can ignore the canon against superfluity altogether. But it suffices to observe that "encouraged"—understood to encompass solicitation—has

at least some distinct applications from its neighboring verbs. Imagine, for example, someone who promises to give a job to an alien if he comes to the United States unlawfully. That promise might not involve assisting—or aiding and abetting—because it would play no role in helping the individual actually cross the border; it would merely provide benefits after the fact. *See United States v. Innie*, 7 F.3d 840, 852 (9th Cir. 1993) ("[B]eing an accessory *after* the fact is clearly different from aiding and abetting."). And it might not constitute inducement if the person ultimately did not enter the United States, as "induce" suggests a *successful* effort to persuade someone to do something. *See Webster's Third New International Dictionary* 1154 (2002) ("to move and lead (as by persuasion or influence)"). But it could constitute encouragement.

Even if we had some doubt about our interpretation of the word "encouraged," the canon of constitutional avoidance would militate in its favor. *See Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems."). Under Marquez-Reyes's interpretation, section 1182(a)(6)(E)(i) would cover every communication by an alien that has something to do with a noncitizen's decision to enter illegally—including, perhaps, pro-immigration political advocacy. That interpretation would raise serious constitutional questions, so even if we thought it a permissible reading of the text, we would avoid it in favor of the interpretation we announce today. *See Ferber*, 458 U.S. at 769 n.24 ("When a federal court is dealing with a federal statute challenged as overbroad, it should, of course, construe the statute to avoid constitutional

problems, if the statute is subject to such a limiting construction."); *accord Broadrick*, 413 U.S. at 613.

In sum, "encouraged" refers to soliciting or aiding and abetting criminal conduct, and section 1182(a)(6)(E)(i) therefore applies to the solicitation or facilitation of specific unlawful activity—illegal entry or attempted entry into the United States.

B

We now consider whether section 1182(a)(6)(E)(i) covers a substantial amount of protected speech, "not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292.

At the outset, we reject Marquez-Reyes's suggestion that we focus our analysis solely on "encouraged" to the exclusion of the remaining verbs. In conducting the overbreadth inquiry, we must determine whether the statute, taken as a whole, reaches an impermissible quantum of protected speech that far exceeds its legitimate sweep. *See Ferber*, 458 U.S. at 769 n.24. Only then may we determine whether the statute is "severable," and if so, invalidate "only the unconstitutional portion." *Id.*; *see United States v. Kaczynski*, 551 F.3d 1120, 1125 (9th Cir. 2009) ("A court does not sever a statute prior to determining whether it is facially valid.").

"[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *United States v. Stevens*, 559 U.S. 460, 468 (2010) (quoting *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002)). But the First Amendment does not protect speech that is "used as an integral part of conduct in violation of a valid criminal

statute." *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949). Statutes that punish "conspiracy, incitement, and solicitation" of crimes may reach at least some speech but nevertheless survive facial First Amendment scrutiny. *See Williams*, 553 U.S. at 298; *see also Cox*, 379 U.S. at 563.

Section 1182(a)(6)(E)(i), as we interpret it, targets conduct that solicits, aids, or abets the commission of a federal crime. *See* 8 U.S.C. §§ 1325, 1326. It therefore has many legitimate applications that do not involve speech at all. *See Virginia v. Hicks*, 539 U.S. 113, 124 (2003) (noting that an overbreadth challenge "[r]arely, if ever, will . . . succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech."). That conclusion is not merely a theoretical assessment of the statute's scope; it is the product of experience. The cases in which courts have upheld the Board's determination that an alien is removable under section 1182(a)(6)(E)(i) overwhelmingly involve non-expressive conduct, such as paying smugglers, procuring fraudulent documents and presenting them to immigration officials, or illegally transporting noncitizens across the border. *See Altamirano*, 427 F.3d at 592–93 (collecting cases); *see also Tapucu*, 399 F.3d at 741–42 (same).

To the extent that cases under section 1182(a)(6)(E)(i) have involved speech, that speech was accompanied by some "affirmative act of help, assistance, or encouragement" that was either integral to an alien's illegal entry or ancillary to actions ordinarily understood as smuggling. *Altamirano*, 427 F.3d at 592; *see also Moran v. Ashcroft*, 395 F.3d 1089, 1091 (9th Cir. 2005) (involving an alien who told his wife "he wanted her and their son to come to live with him in the United States and he would be willing to help pay" for a

smuggler, and then paid the smuggler based on a pre-arrangement with his wife's parents), *overruled on other grounds by Sanchez v. Holder*, 560 F.3d 1028 (9th Cir. 2009) (en banc). Thus, a significant portion of any speech that might fall within the statute's scope is unprotected. *See Williams*, 553 U.S. at 298. It is telling that Marquez-Reyes is unable to identify any instance in which a court has applied section 1182(a)(6)(E)(i) in the manner that he advocates.

We recognize that an "important distinction" exists "between a proposal to engage in illegal activity and the abstract advocacy of illegality," the latter of which is constitutionally protected. *Williams*, 553 U.S. at 298–99; *see Brandenburg v. Ohio*, 395 U.S. 444, 447–48 (1969) (per curiam). But the statute here proscribes intentional conduct that solicits, aids, or abets a specific alien in an attempt to enter the United States illegally. We have observed that "the *mens rea* and *actus reus* required for solicitation are similar to those required for aiding and abetting, conspiracy and attempt." *United States v. Contreras-Hernandez*, 628 F.3d 1169, 1173 (9th Cir. 2011) (quoting *United States v. Cornelio-Pena*, 435 F.3d 1279, 1286 (10th Cir. 2006)). It requires, in other words, "the specific intent to facilitate the commission of a crime by someone else." *United States v. Garcia*, 400 F.3d 816, 819 (9th Cir. 2005). The statute therefore does not reach mere abstract advocacy, as Marquez-Reyes suggests.

In this respect, section 1182(a)(6)(E)(i) is considerably different from 8 U.S.C. § 1324(a)(1)(A)(iv), which we determined to be facially overbroad in *United States v. Hansen*, 25 F.4th 1103 (9th Cir. 2022). *Accord United States v. Sineneng-Smith*, 910 F.3d 461 (9th Cir. 2018), *vacated*, 140 S. Ct. 1575 (2020). Section 1324(a)(1)(A)(iv) makes it a federal felony to "encourag[e] or induc[e] an alien to come

to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law." In *Hansen*, we emphasized that the words "encourage or induce" were not "part of a series of words that shed additional light on their meaning," and we therefore held that the statute did not lend itself to the application of *noscitur a sociis* that dictates our interpretation of section 1182(a)(6)(E)(i) today. 25 F.4th at 1107–08. We found additional support for that conclusion in the structure of the statute—in particular, in separate provisions making it illegal to bring aliens into the country, shield them from detection, or aid and abet those acts. *Id.* at 1108–09; *see* 8 U.S.C. § 1324(a)(1)(A)(i)–(iii), (a)(1)(A)(v)(II). Reasoning that "Congress intended for the provisions to have different meanings," we concluded that those provisions "strongly suggest[ed] that subsection (iv) should not also be read as an aiding and abetting provision" and therefore we declined to adopt a narrow interpretation of "encouraged." *Hansen*, 25 F.4th at 1108–09.

We also emphasized that section 1324(a)(1)(A) was a criminal prohibition on encouraging conduct—such as residence in the United States without legal status—that was not itself a crime. *Hansen*, 25 F.4th at 1110. By contrast, section 1182(a)(6)(E)(i) applies only to illegal entry into the United States, and its only sanction is ineligibility for certain immigration benefits. While the "threat of criminal prosecution is [not] a necessary condition for the entertainment of a facial challenge," *Los Angeles Police Dep't*, 528 U.S. at 39, the "concern that an overbroad statute deters protected speech is especially strong where . . . the statute imposes criminal sanctions," *Doe v. Harris*, 772 F.3d 563, 578 (9th Cir. 2014).

Our decision in *United States v. Rundo*, 990 F.3d 709 (9th Cir. 2021) (per curiam), is similarly unhelpful here because it too involved the word "encourage" in a very different statutory context. In that case, we considered a provision of 18 U.S.C. § 2101(a)(2) that makes it a crime to "encourage" a riot. *Rundo*, 990 F.3d at 716–17. Giving "encourage" its ordinary meaning, we held the statute to be facially overbroad. We discussed the meaning of "encourage" only briefly, without considering whether it could be limited to solicitation or aiding and abetting; the surrounding statutory terms in section 2101(a)(2)—namely "organize, promote . . . participate in, or carry on"—did not lend themselves to such a reading. *See id.* at 717. By contrast, as we have explained, the words surrounding "encourage" in section 1182(a)(6)(E)(i) instead imply its narrower, criminal-law meaning.

We need not decide whether section 1182(a)(6)(E)(i) reaches *only* unprotected speech. It is enough to say that, to the extent the statute may reach some protected speech, it is not substantially overbroad relative to its legitimate sweep. *See Williams*, 553 U.S. at 303 (rejecting facial overbreadth challenge because, "[i]n the vast majority of its applications, th[e] statute raise[d] no constitutional problems whatever"). Nor do we foreclose future as-applied First Amendment challenges to the statute. As we have already explained, however, such a challenge is impossible in this case because Marquez-Reyes has refused to disclose just what he said or did to encourage his son to attempt to enter the country. We are presented only with a facial overbreadth challenge, and it is only that challenge that we reject today.

## III

Marquez-Reyes next argues that section 1182(a)(6)(E)(i) is unconstitutionally vague, in violation of the Fifth

Amendment's Due Process Clause. He does not suggest that the statute is vague as applied to his conduct. To the contrary, he concedes that his actions—whatever they were—involved encouraging unlawful entry and therefore fell within the scope of section 1182(a)(6)(E)(i). Instead, he presents a facial vagueness challenge. But his concession forecloses that challenge as well because an individual who "has engaged in conduct that is clearly covered" by a statute "cannot complain of the vagueness of the law as applied to the conduct of others." *Ledezma-Cosino*, 857 F.3d at 1047 (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 19 (2010)).

In *Kashem v. Barr*, 941 F.3d 358, 377 (9th Cir. 2019), we suggested that a party whose conduct is clearly covered by a statute might be able to bring a facial vagueness challenge in "exceptional circumstances," such as when a statute is "plagued by such indeterminacy that [it] might be vague even as applied to the challengers." *Cf. Johnson v. United States*, 576 U.S. 591, 602–04 (2015). But this case does not present such circumstances. Marquez-Reyes admits that his actions are covered by the statute, and his vagueness challenge therefore fails.

## IV

Marquez-Reyes's equal-protection challenge fares no better. Under 8 U.S.C. § 1182(d)(11), when certain lawful permanent residents and other aliens seek admission or adjustment of status, the Attorney General has discretion to waive the smuggling bar—that is, to excuse the conduct covered by section 1182(a)(6)(E)(i)—so long as the smuggling involves only a "spouse, parent, son, or daughter." But no such waiver is available for aliens seeking cancellation of removal. *Sanchez*, 560 F.3d at 1030–32.

Marquez-Reyes says that this disparate treatment violates the equal-protection component of the Due Process Clause.

To establish an equal-protection violation, Marquez-Reyes must show that he is "being treated differently from similarly situated individuals." *Gonzalez-Medina v. Holder*, 641 F.3d 333, 336 (9th Cir. 2011). Where, as here, there is no assertion that the distinction "implicates fundamental rights or involves a classification along suspect lines, only rational basis scrutiny applies." *United States v. Calderon-Segura*, 512 F.3d 1104, 1107 (9th Cir. 2008). Under rational-basis review, a legislative classification "comes to us bearing a strong presumption of validity." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314 (1993). Those "attacking the rationality of the legislative classification have the burden 'to negative every conceivable basis which might support it.'" *Id.* at 315 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)). And our review is particularly deferential where the classification involves an exercise of Congress's authority to regulate immigration: "'[O]ver no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens." *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972) (quoting *Oceanic Navigation Co. v. Stranahan*, 214 U.S. 320, 339 (1909)).

In *Sanchez*, we held that section 1182(d)(11) does not permit the Attorney General to waive the smuggling bar for applicants for cancellation of removal. 560 F.3d at 1030–32, 1034. While *Sanchez* did not involve an equal-protection challenge, we nevertheless made clear that it was rational for Congress to allow inadmissibility waivers only in certain contexts. Specifically, in rejecting an argument that reading the statute according to its terms would lead to an absurd result, we reasoned that "[i]t is not irrational for Congress to

provide family unity waivers only to persons who have complied with immigration laws by becoming lawful permanent residents or to those seeking admission or adjustment of status by applying for a visa, and not to aliens who entered without inspection and then attempted to smuggle others in after them." *Id*. at 1033; *see Abebe v. Mukasey*, 554 F.3d 1203, 1206 (9th Cir. 2009) (en banc) ("[I]n the equal protection context . . . Congress's treating entering aliens differently from illegally present aliens passes rational basis review."); *Taniguchi v. Schultz*, 303 F.3d 950, 957–58 (9th Cir. 2002) (holding that 8 U.S.C. § 1182(h), which denied a waiver of deportation to lawful permanent resident aggravated felons but not to other aliens, did not violate equal protection). Marquez-Reyes has not met his burden "to negative every conceivable basis which might support" the legislative classification here. *Lehnhausen*, 410 U.S. at 364. Accordingly, section 1182(d)(11) does not violate the equal-protection component of the Due Process Clause.

V

Marquez-Reyes last argues that the agency abused its discretion when it denied his request for administrative closure. "Administrative closure is a procedure by which an [immigration judge] or the BIA temporarily removes a case from the active calendar or docket." *Gonzalez-Caraveo v. Sessions*, 882 F.3d 885, 889 (9th Cir. 2018). In *Matter of Avetisyan*, 25 I. & N. Dec. 688 (B.I.A. 2012), the Board of Immigration Appeals articulated a non-exhaustive list of factors for immigration judges to consider when evaluating a request for administrative closure. Those factors include:

> (1) the reason administrative closure is sought; (2) the basis for any opposition to administrative closure; (3) the likelihood the

respondent will succeed on any petition, application, or other action he or she is pursuing outside of removal proceedings; (4) the anticipated duration of the closure; (5) the responsibility of either party, if any, in contributing to any current or anticipated delay; and (6) the ultimate outcome of removal proceedings (for example, termination of the proceedings or entry of a removal order) when the case is recalendared before the Immigration Judge or the appeal is reinstated before the Board.

*Id.* at 696.

Marquez-Reyes says that the immigration judge applied the wrong legal standard by failing to consider that the government did not articulate a reason for opposing administrative closure. While the immigration judge did not expressly weigh that fact, neither did he ignore the opposition altogether or misstate the applicable test. Instead, the immigration judge applied the five remaining *Avetisyan* factors and explained that Marquez-Reyes was not pursuing any sort of petition beyond the existing proceedings; that the period of closure he requested—around five years—was lengthy; that it was uncertain whether he would earn discretionary cancellation of removal relief after those five years; that he was responsible for his own ineligibility; and that he was seeking closure for reasons that would undermine the legislative purpose of the ten-year moral-character requirement. We see no abuse of discretion in the application of those factors.

Marquez-Reyes relies on *Matter of W-Y-U-*, 27 I. & N. Dec. 17 (B.I.A. 2017), in which the Board held that "the

primary consideration for an Immigration Judge in determining whether to administratively close or recalendar proceedings is whether the party opposing administrative closure has provided a persuasive reason for the case to proceed and be resolved on the merits." *Id*. at 18–20. That decision, however, was issued after the immigration judge's decision in this case, so it was not then binding on the agency. *See Avila-Sanchez v. Mukasey*, 509 F.3d 1037, 1040 (9th Cir. 2007). (Our analysis is also unaffected by the Board's decision to overrule *Avetisyan* in *Matter of Castro-Tum*, 27 I. & N. Dec. 271 (B.I.A. 2018), because the Attorney General has since overruled *Castro-Tum* and restored the *Avetisyan* standard. *Matter of Cruz-Valdez*, 28 I. & N. Dec. 326 (Att'y Gen. 2021).)

In any event, the Board had the benefit of the government's subsequently provided rationale for its opposition—Marquez-Reyes's status as "an enforcement priority"—and its de novo review made any error by the immigration judge harmless. *See Ghaly v. INS*, 58 F.3d 1425, 1430 (9th Cir. 1995). The agency did not abuse its discretion in determining that the proceedings should go forward.

**PETITION DENIED**.

---

BERZON, Circuit Judge, dissenting:

I respectfully dissent. The majority's holding regarding the meaning of "encouraged" in Section 212(a)(6)(E)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(E)(i), is inconsistent with recent case law and illogical on its own terms. And construed in accordance with its ordinary meaning, "encouraged" includes a wide swath of constitutionally protected speech.

1. Twice in the past two years, this Court has invalidated statutory provisions that made it a crime to "encourage" another person to do something. *United States v. Rundo*, 990 F.3d 709, 720 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 865 (2022); *United States v. Hansen*, 25 F.4th 1103, 1110–11 (9th Cir. 2022). Reviewing those provisions, we recognized that the "government may restrict speech 'in a few limited areas,' including . . . incitement[] and speech integral to criminal conduct." *Hansen*, 25 F.4th at 1109 (quoting *United States v. Stevens*, 559 U.S. 460, 468 (2010)). But those exceptions to First Amendment protection are narrowly defined. Beginning with incitement, "[t]he constitutional guarantees of free speech and free press" protect "advocacy of . . . law violation except where such advocacy is directed to inciting or producing *imminent* lawless action and is *likely* to incite or produce such action." *Rundo*, 990 F.3d at 713 (emphasis added) (quoting *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) (per curiam)). As for speech integral to criminal conduct, that exception applies only "if the intent of the actor and the objective meaning of the words used are so close in time and purpose to a substantive evil as to become part of the ultimate crime itself." *United States v. Freeman*, 761 F.2d 549, 552 (9th Cir. 1985). In *Rundo* and *Hansen*, we concluded that simply "encouraging" action either did not qualify as, or was not limited to, incitement or speech integral to criminal conduct. *Rundo*, 990 F.3d at 717; *Hansen*, 25 F.4th at 1110. The statutory provisions at issue therefore ran afoul of the First Amendment by prohibiting too much protected speech. *Rundo*, 990 F.3d at 720; *Hansen*, 25 F.4th at 1110.

More specifically, *Rundo* addressed the Anti-Riot Act, 18 U.S.C. §§ 2101–2102. That statute provided, in relevant part, that

[w]hoever travels in interstate or foreign commerce or uses any facility of interstate or foreign commerce . . . with intent . . . to organize, promote, *encourage*, participate in, or carry on a riot . . . and who either during the course of any such travel or use or thereafter performs or attempts to perform any other overt act for [a specified purpose] . . . [s]hall be fined under this title, or imprisoned not more than five years, or both.

18 U.S.C. § 2101(a) (emphasis added). Consulting two dictionaries, we found definitions for "encourage" that included "[t]o instigate; to incite to action; to embolden; to help[;] . . . to recommend, advise." 990 F.3d at 717 (quoting *Encourage*, Black's Law Dictionary (11th ed. 2019); *Encourage*, The Compact Oxford English Dictionary § 2(b) (2d ed. 1991)). We held that "encourage," so defined, did not meet the test for incitement because it "fail[ed] *Brandenburg*'s imminence requirement." *Id.* Concluding that the provision "criminalize[d] a substantial amount of protected speech," we "salvaged" the Anti-Riot Act by severing the word "encourage" from it, as well as other words that did not satisfy the incitement test. *Id.* at 720.

*Hansen* addressed a statute imposing criminal penalties on "[a]ny person who . . . *encourages* or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law." 8 U.S.C. § 1324(a)(1)(A). We observed that the "plain meaning[]" of "encourage" is to "to inspire with courage, spirit, or hope . . . to spur on . . . to give help or patronage to." *Hansen*, 25 F.4th at 1107–08 (alteration in original) (quoting *United States v. Thum*, 749 F.3d 1143, 1147 (9th Cir. 2014)). The

government maintained in *Hansen*, as it does here, that the provision was "limited to speech integral to criminal conduct, specifically solicitation and aiding and abetting." *Id.* at 1109. We rejected that argument, reasoning in part that section 1324(a)(1)(A) contains a separate provision penalizing aiding and abetting, so interpreting "encourages" to mean "aids and abets" would make one of the provisions "superfluous." *Id.* (citing 8 U.S.C. § 1324(a)(1)(A)(v)(II)).

*Hansen* acknowledged that the "encourages" provision "encompasse[d] some criminal *conduct*," such as "procuring and providing fraudulent documents and identification information to unlawfully present aliens, assisting in unlawful entry, misleadingly luring aliens into the country for unlawful work, and smuggling activities." *Id.* at 1109 (emphasis added). Considering those examples, we concluded that the provision had a "relatively narrow legitimate sweep." *Id.* And it troubled us that "many of these crimes seem also to be encompassed by the other subsections of 1324(a)(1)(A), leaving subsection (iv)'s plainly legitimate sweep little independent work to do." *Id.*

In comparison, we concluded, the provision covered "a substantial amount of protected speech," including "[m]any commonplace statements and actions." *Id.* at 1110. For example, the "plain language" of the provision covered "knowingly telling an undocumented immigrant 'I encourage you to reside in the United States.'" *Id.* We emphasized that that statement was "protected by the First Amendment." *Id.* As the Supreme Court explained in *United States v. Williams*, 553 U.S. 285 (2008), such a statement is protected "abstract advocacy." *Id.* at 299–300 (giving the example "I encourage you to obtain child pornography"). *Hansen* offered several other examples of protected speech covered by the "encourages" provision, including

"encouraging an undocumented immigrant to take shelter during a natural disaster, advising an undocumented immigrant about available social services, telling a tourist that she is unlikely to face serious consequences if she overstays her tourist visa, or providing certain legal advice to undocumented immigrants." *Hansen*, 25 F.4th at 1110. Concluding that the "chilling effect" of the provision was "substantial," we invalidated it as overbroad. *Id.* at 1110–11.

2. The smuggling statute we interpret in this case provides that "[a]ny alien who at any time knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law is inadmissible." 8 U.S.C. § 1182(a)(6)(E)(i). The majority opinion reads the word "encouraged" as limited to its "criminal-law sense of solicitation or aiding and abetting." Majority Op. 11–12. By doing so, it parts ways with *Rundo* and *Hansen*. To justify that departure, the majority maintains—impermissibly in my view—that it can save the statute's unconstitutionality by construing "encourage" not according to its ordinary English meaning but as a legal term of art, equivalent to "solicitation or aiding and abetting." *Id.* This maneuver falters for several reasons.

As evidence that "encourage" has a "narrower, criminal-law" meaning, the majority quotes the Model Penal Code's definition of criminal solicitation, which provides that a person is guilty of solicitation to commit a crime "if with the purpose of promoting or facilitating its commission he commands, *encourages* or requests another person to engage in specific conduct that would constitute such crime." Majority Op. 10–11 (emphasis in original) (quoting Model Penal Code § 5.02(1)).

First, relying on the Model Penal Code definition of "criminal solicitation" to define "encourage" is circular, as

the definition *uses* the word "encourage"; it does not define it, narrowly or otherwise. Telling us that solicitation includes "encourag[ing] . . . another person to engage in specific conduct that would constitute [a] crime" does not tell us what "encourage" means, and it certainly does not tell us that "encourage" equates to criminal solicitation. *See* Majority Op. 14 ("'[E]ncouraged' [is] understood to encompass solicitation"). And, of course, precisely because "solicitation" is a common criminal law concept, one would think that if Congress meant "solicited" in 8 U.S.C. § 1182(a)(6)(E)(i), it would have said "solicited," not "encouraged."

Second, the Model Penal Code definition of criminal solicitation the majority relies upon requires that the encouragement relate to a specific crime, but it does not limit the application of the term to conduct rather than speech. And the Model Penal Code definition does not appear to meet our case law's narrow definition of "speech integral to criminal conduct," that is, speech in which "the intent of the actor and the objective meaning of the words used are so close in time and purpose to a substantive evil as to become part of the ultimate crime itself." *Freeman*, 761 F.2d at 552. As we later explained in *United States v. Sineneng-Smith*, 910 F.3d 461 (9th Cir. 2018), *vacated and remanded on other grounds*, 140 S. Ct. 1575 (2020):

> In *Freeman*, we reviewed "convict[ions] on fourteen counts of aiding and abetting and counseling violations of the tax laws, an offense under 26 U.S.C. § 7206(2)." [*Freeman*, 761 F.2d] at 551. We held that the defendant was entitled to a jury instruction on a First Amendment defense as to twelve of the counts because, at least arguably, the

defendant made statements about the "unfairness of the tax laws generally." *Id.* at 551–52. Conversely, the defendant was not entitled to the First Amendment instruction on the remaining two counts because the defendant actually assisted in the preparation of false tax returns. *Id.* at 552. We reasoned that "[e]ven if the convictions on these [two] counts rested on spoken words alone, the false filing was so proximately tied to the speech that no First Amendment defense was established." *Id.* As *Freeman* illustrates, although some speech that aids or abets a crime is so integral to the crime itself that it is not constitutionally protected, other speech related to criminal activity is not so integral as to be unprotected.

*Sineneng-Smith*, 910 F.3d at 481 (first, third, and fourth alterations in original).

In my view, our best hope of construing "encouraged" in section 1182(a)(6)(E)(i) sufficiently narrowly to avoid the constitutional problems identified in *Rundo* and *Hansen* would be to hew more closely to our definition in *Freeman* of "speech integral to criminal conduct." In *Freeman*, we concluded that the defendant's speech was integral to criminal conduct because he used speech to "actually assist[] in the preparation of false tax returns." *Sineneng-Smith*, 910 F.3d at 481. In other words, his "speech . . . aid[ed] or abet[ted] a crime." *Id.*

The problem is, if we were to interpret "encouraged" in section 1182(a)(6)(E)(i) to mean "aided and abetted" or "assisted" a crime, we would create a surplusage problem

similar to the one we addressed in *Hansen*. *See Hansen*, 25 F.4th at 1109. Section 1182(a)(6)(E)(i) separately penalizes "[a]ny alien who at any time knowingly has . . . induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law." So if we were to interpret "encouraged" narrowly enough to avoid penalizing protected speech, we would arrive at a situation in which nearly every example of speech or conduct that "encouraged" another alien to enter the United States would also "be encompassed by" the other verbs in section 1182(a)(6)(E)(i), leaving "encouraged" "little independent work to do." *Hansen*, 25 F.4th at 1109. As in *Hansen*, then, I must conclude that section 1182(a)(6)(E)(i) is not "readily susceptible" to a limiting construction that would avoid penalizing too much protected speech. *Id.* at 1110 (quoting *Stevens*, 559 U.S. at 481); *see also id.* at 1110–11 ("[W]e will not rewrite a law to conform it to constitutional requirements for doing so would constitute a serious invasion of the legislative domain and sharply diminish Congress's incentive to draft a narrowly tailored law in the first place." (quoting *Stevens*, 559 U.S. at 481)).

I note that the majority could have interpreted "encouraged" in 8 U.S.C. § 1182(a)(6)(E)(i) to require an "affirmative act." *See Altamirano v. Gonzales*, 427 F.3d 586, 592 (9th Cir. 2005). The majority hints at that interpretation but does not adopt it. *See* Majority Op. 13, 17–18. The other four verbs in the statute—induced, assisted, abetted, or aided—all imply an *action* that makes it more likely that another person will enter or try to enter the United States. Invoking the canon of *noscitur a sociis*, we could read "encouraged" likewise to require an affirmative act increasing the likelihood of illegal entry or attempted entry into the United States. *See McDonnell v. United States*, 579 U.S. 550, 568–69 (2016). This interpretation would likely

lead to a surplusage problem as well, but at least it would eliminate the speech coverage issues the majority's version embraces.

*Rundo* and *Hansen* have demonstrated that a statutory provision that penalizes "encouraging" someone to do something runs a serious risk of chilling speech by covering a substantial amount of protected speech, compared to its legitimate sweep. The majority strains to avoid this problem by interpreting "encouraged" in section 1182(a)(6)(E)(i), improbably, to cover only speech closely connected to a crime—but as I have explained, not closely enough to survive First Amendment invalidity. And successfully limiting "encouraged" in such a way would make it largely redundant of the other verbs in the statute. Because I view the majority's approach as an untenable statutory interpretation and also one insufficient to save the statute from invalidity, I would instead adopt *Rundo*'s solution and sever the word "encouraged" from section 1182(a)(6)(E)(i). *See Rundo*, 990 F.3d at 720. If we take the government at its word that, as used in section 1182(a)(6)(E)(i), "encouraged" really is "limited to speech integral to criminal conduct," then excising "encouraged" from the provision would have little, if any, effect, as the provision already covers speech or conduct that "induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law." 8 U.S.C. § 1182(a)(6)(E)(i). I therefore respectfully dissent.