**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

SEP 24 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ERLIN BONILLA AGUILAR, <br><br> Petitioner, <br><br> v. <br><br> MERRICK B. GARLAND, Attorney General, <br><br> Respondent. | No. 23-4064 <br><br> Agency No. <br> A213-074-964 <br><br> MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted September 12, 2024**
Seattle, Washington

Before: CHRISTEN and SUNG, Circuit Judges, and RAKOFF, District Judge.***

In 2019, Petitioner Erlin Bonilla Aguilar, a native and citizen of Honduras,

was ordered removed to Honduras following a separate removal proceeding. Bonilla

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\** The panel unanimously concludes this case is suitable for decision without oral argument. See Fed. R. App. P. 34(a)(2).

\*** The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

returned to Honduras and remained there until 2021, when he illegally reentered the United States, illegally entered Canada, and applied for asylum in Canada. After his Canadian asylum application was denied, Bonilla was transported back to the United States and his original removal order was reinstated.

Bonilla was subsequently placed in removal proceedings as the result of an inadvertent data disclosure that revealed information related to his reasonable fear claim.[1] An Immigration Judge ("IJ") proceeded to deny his application for asylum and withholding of removal under the Immigration and Nationality Act ("INA"), as well as his application for protection under the Convention Against Torture ("CAT"). See 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A); 8 C.F.R. §§ 1208.16(c)-1208.18. The Board of Immigration Appeals ("BIA") dismissed his appeal. Bonilla now petitions for review of the BIA's decision with respect to his application for deferral of removal under CAT, only.[2] We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition.

To qualify for deferral of removal under CAT, Bonilla must demonstrate that it is "more likely than not" that he would be tortured if he were removed to Honduras.

---

[1] See Unintentional Disclosures of Personally Identifiable Information on November 28 and December 7, 2022, U.S. Immigr. & Customs Enf't, https://www.ice.gov/pii (last updated Jan. 18, 2023) [https://perma.cc/Z3AW-TLZX].

[2] On appeal, Bonilla concedes that he committed "particularly serious crimes" in the United States and is therefore ineligible for asylum and withholding of removal under the INA.

8 C.F.R. § 1208.16(c)(2). Torture amounts to an "extreme form of cruel and inhuman treatment" that "does not include lesser forms of cruel, inhuman or degrading treatment or punishment" and is inflicted or instigated by or with the consent or acquiescence of a public official. 8 C.F.R. §§ 1208.18(a)(1), (2). "We review questions of law regarding CAT claims de novo." Park v. Garland, 72 F.4th 965, 978 (9th Cir. 2023). To the extent the BIA agrees with the IJ's reasoning, this Court reviews both decisions. Garcia-Martinez v. Sessions, 886 F.3d 1291, 1293 (9th Cir. 2018). This Court reviews the factual findings underlying a denial of deferral of removal for substantial evidence and "must uphold those findings unless the record compels a contrary result." Eneh v. Holder, 601 F.3d 943, 946 (9th Cir. 2010).

Bonilla first argues that he would likely face torture at the hands of Honduran security forces and gangs based on his past experiences in Honduras. With respect to Honduran security forces, Bonilla points to a single incident from 2000 in which Honduran officials found him outside past curfew, mistook him for a gang member, beat him, and threatened to kill him. However, after the officials confirmed that he was not in a gang, they released him. The agency concluded that this remote incident did not support a finding that Bonilla would likely face torture if he were returned because the security forces did not approach him between 2019 and 2021, when he was back in Honduras.

3

With respect to gangs, Bonilla points to multiple instances in which he was attacked by "MS-13" members. However, each of those instances took place over twenty years ago. While Bonilla also describes a single incident from 2021 in which an "18th Street" member allegedly attempted to shoot him in the head for witnessing a murder and threatened to kill him if he reported the murder to the police, he never reported the murder to the police. The IJ determined that the record did not support Bonilla's contention that the gang would search for and torture him for witnessing a random act of violence that occurred years ago. The IJ also noted evidence that the Honduran government has made significant efforts to combat gangs and official corruption in the country, undercutting Bonilla's argument that a public actor would acquiesce to gang members harming him. On this record, the agency's determination that it was not more likely than not that Bonilla would face torture based on his past experiences, or that the government would acquiesce to the gang torturing him, is supported by substantial evidence.

Bonilla next argues that he would likely face torture based on his mental health conditions, which include PTSD and schizophrenia. Specifically, he argues that upon returning to Honduras he would likely become homeless, which would cause him to suffer from severe psychosis and thereby render him a target for police officers and gangs. Alternatively, he argues that he would likely be committed to a psychiatric hospital, where he would experience conditions that rise to the level of

torture. Once again, the agency's determination that Bonilla is unlikely to be tortured is supported by substantial evidence. Bonilla did not suffer from severe psychosis when he was last removed to Honduras and his mental health has remained the same—if not improved—since then. Bonilla was not targeted by police officers or gangs or committed to a psychiatric hospital when he was last removed to Honduras. And, in any event, the agency concluded that Bonilla has not demonstrated that Honduran officials acquiesce to the torture of mentally ill people, and cited evidence of the Honduran government's efforts to overhaul its mental health care system. Accordingly, the agency did not err in denying his application for deferral of removal.

Bonilla next argues that the agency erred by discounting the expert testimony of Dr. Pine, who spoke about Bonilla's mental health conditions and psychiatric hospitals in Honduras. The agency is required to give "reasoned consideration" to any "potentially dispositive" evidence. Cole v. Holder, 659 F.3d 762, 772 (9th Cir. 2011). However, even where, as here, the agency determines that a noncitizen's evidence is credible, it "need not find [that] evidence persuasive or sufficient to meet the burden of proof." Garland v. Ming Dai, 593 U.S. 357, 371 (2021). In this case, the agency reasonably gave greater weight to Bonilla's actual experiences in Honduras between 2019 and 2021 than the expert witness' predictions about what might happen if he returns. The record shows that Dr. Pine never spoke with Bonilla

and that her last visit to a Honduran psychiatric hospital was in 2014. Because the agency specifically considered the limitations of Dr. Pine's testimony, it did not err in subsequently affording it limited weight.

Finally, Bonilla argues that the IJ erred in concluding that he could relocate to avoid torture if he were removed. However, because the BIA agreed with the IJ's conclusion that Bonilla had failed to demonstrate that it is more likely than not that he would be tortured in Honduras based on his past experiences in Honduras and his mental health conditions, the BIA did not need to consider whether he could avoid torture in Honduras. See INS v. Bagamasbad, 429 U.S. 24, 25 (1976). For that reason, any error that the IJ allegedly made in finding that Bonilla could relocate to avoid torture was harmless. Cf. Marques-Reyes v. Garland, 36 F.4th 1195, 1209 (9th Cir. 2022) (noting that the BIA's de novo review made any error by the IJ harmless).

For the foregoing reasons, the petition is **DENIED.**